Filed 2/9/22  Roe v. County of Orange CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JANE ROE, | |
| Plaintiff and Appellant, | E074261 |
| v. | (Super.Ct.No. RIC1803575) |
| COUNTY OF ORANGE, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Randall S. Stamen, Judge.  Affirmed.

Alexander Morrison + Fehr, J. Bernard Alexander III and Tracy L. Fehr; Markson Pico, Brett S. Markson and Timothy A. Pico for Plaintiff and Appellant.

Woodruff, Spradlin & Smart, Daniel K. Spradlin, Barbara Raileanu and Roberta A. Kraus for Defendant and Respondent.

1

Plaintiff, Jane Roe, appeals from an order granting summary adjudication of issues in favor of the County of Orange (County), on her cause of action for sexual harassment in violation of the Fair Employment and Housing Act (FEHA), as well as Government Code section 12920, et seq., and Government Code section 12940 et seq., arising from a sexual assault committed by another Orange County Deputy Sheriff during the extradition of an inmate to Texas. The County's motion for summary adjudication of that cause of action was granted, and, after plaintiff settled her claim against the individual deputy involved in the assault, she dismissed the remaining causes of action[1] and filed this appeal.

On appeal, plaintiff argues the trial court erred in granting the motion for summary adjudication by (1) erroneously finding that the individual deputy who committed the assault was not her supervisor within the meaning of the FEHA and Government Code sections 12920 and 12926, subdivision (t); (2) finding the County not liable despite plaintiff's reasonable belief that Medina was her supervisor; and (3) finding the County not liable for coworker sexual harassment. We affirm.

## BACKGROUND

We set out the undisputed material facts as ascertained from the parties' moving and opposing papers (see *Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 327) and state other facts and draw inferences from them in the light most favorable to plaintiffs.

---

[1] Much ado is made over the fact that plaintiff dismissed otherwise viable causes of action in order to expedite the appeal as to the adverse ruling on the second cause of action. It is irrelevant to us.

(Code Civ. Proc., § 437c, subd. (c)*); Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

Plaintiff began working for the Orange County Sheriff's Department (OCSD) in 2012, and completed her training at the academy in February 2013, after which she was assigned as a Deputy I to work as a bailiff at the Orange County Superior Court, Central Justice Center (CJC). After a time as bailiff, plaintiff transferred to working detention at CJC in August 2016. Plaintiff's supervisors at CJC were Sergeants Arredondo, Chivara, and Hilton, but when she transferred to detention, her supervisors were Sergeants Carpio and Schuch. Between January 2017 and August 2017, plaintiff's supervisors were Sergeants Gilbert and Naranjo. In August/September 2017, plaintiff transferred to Harbor Justice Center.

Plaintiff received positive evaluations from her CJC sergeant and received yearly raises. In October 2016, plaintiff made a sexual harassment complaint against Deputy Rudy Rodriguez, a nonparty to this action, who arrived at CJC a few months after plaintiff. Plaintiff and Rodriguez had become friends and Rodriguez became flirtatious in the summer of 2016, commenting on plaintiff's body and grabbing her butt several times. By October, Rodriguez asked plaintiff to meet him in the guard station, and, when she did so, he closed the door, grabbed her and pressed himself against her, trying to kiss her. Plaintiff pushed him away, told him she was married, and reported the incident to Sergeant Arredondo, but she did not want an investigation. Instead, she asked a supervisor that she not have to work with Rodriguez again.

3

In 2014, plaintiff first met Joseph Medina at a fundraiser for a first responders football team. Medina was a Deputy II who worked patrol at OCSD. He asked plaintiff to start a cheer team for the football team after someone suggested it to him. Plaintiff did so, and her team cheered at the games in 2015 and 2016. Plaintiff socialized with Medina at fundraisers for the team and at post-game dinners, which Medina's wife also attended. Medina never flirted with plaintiff; she considered him to be a friend, and the two did not normally work together, except for when plaintiff accompanied Medina on a ride along in 2016.

In November 2016, Medina asked plaintiff if she wanted to accompany him on an extradition to Houston, Texas. To do so, plaintiff was required to get approval from her supervisor, Sergeant Carpio, which she did. She was aware this would not be an overtime assignment, and that she would receive only eight hours pay per day for the time she was scheduled to work at CJC. Plaintiff and Medina were to transport a male inmate to Houston on November 22-23, 2016, which were regularly scheduled workdays for plaintiff. The extradition would involve staying one night in Houston. Plaintiff was aware of this and had no reservations about going on the extradition with Medina.

Pursuant to OCSD policy, an extradition consists of two deputies transporting an inmate from Orange County to another state, or vice versa. At least one deputy must have patrol experience and must therefore be a Deputy II. However, a Deputy II is not considered a supervisory position. Prior to their first extradition, deputies must watch a PowerPoint training on extraditions, which covers federal requirements and procedures

for boarding an aircraft with a firearm. Plaintiff watched the PowerPoint training presentation.

Following the OCSD policies, plaintiff and Medina got the inmate, put him in restraints, checked out a patrol vehicle, drove to the airport, boarded the aircraft, and flew to Houston, Texas. Upon landing in Houston, Medina rented a car and the inmate was transported to Huntsville prison, where the inmate was checked in. Thereafter, plaintiff and Medina drove to their hotel in Houston, checked in, and went to their respective rooms.

After spending some time in their own rooms, they took a shuttle to go out for dinner in Houston at around 8:00 p.m. They each drank an alcoholic beverage at the bar, where they stayed for approximately one and one-half hours. They each paid for their own dinner and kept receipts to turn them in for reimbursement. After dinner, they went to another bar where they had another alcoholic drink and talked for an hour, laughing, and enjoying themselves. At around 11:00 p.m., they walked to another bar where they consumed more alcohol. They went to yet another bar after midnight where they stayed for one to two hours, with no physical contact between them, and where plaintiff felt comfortable with Medina. Plaintiff and Medina left this last bar when it closed, taking a Uber back to the hotel.

Plaintiff was intoxicated at approximately 2:00 a.m. when they returned to the hotel, where Medina, who was also drunk, walked with plaintiff to her room. Plaintiff entered her room with Medina following behind her, and the two continued their

5

conversation while plaintiff changed into a T-shirt. Plaintiff was thirsty and did not have water, so Medina got her a glass of water, and returned with it as plaintiff was sitting on her bed, starting to doze off. Plaintiff drank the water and fell asleep. Plaintiff awoke early on the morning of November 23, 2016, to find Medina sleeping in her bed with his hand on her breast. She moved his hand, rolled over, scooted closer to the edge of the bed, and went back to sleep. Approximately an hour later, she awoke again to find Medina touching her vagina with his hand, after which, plaintiff felt something penetrate her anus. She was in shock for a second or two, and then got out of bed without saying anything to Medina. She went into the bathroom, locked the door, and took a shower. She stayed in the bathroom for a while after showing, and then looked out to find Medina gone from her room. She noticed carbonation in her water glass from the previous night and believed Medina had drugged her.

At 11:00 a.m., Medina knocked on plaintiff's door and they went to the lobby together to check out. Afterwards, the two drove around for the day, stopping for lunch in Galveston, and then returning to Houston for their return flight. Upon arriving in Orange County, plaintiff and Medina drove to the Intake Release Center where their cars were parked. A week later, plaintiff reported the incident to Sergeant Arredondo and a criminal investigation was initiated, but OCSD turned the matter over to the Houston Police Department, which declined to prosecute.

Following the report, plaintiff filed a complaint alleging causes of action for (1) sexual battery against Medina; (2) sexual harassment against Medina and the County;

(3) retaliation in violation of the FEHA; (4) failure to prevent harassment, discrimination, and retaliation against the County, (5) false imprisonment against Medina, (6) whistleblower protection violation against the County, (7) declaratory relief against the County, and (8) injunctive relief against the County. Plaintiff dismissed the first and fifth causes of action against the County on April 23, 2018.

On March 22, 2019, the County filed its motion for summary adjudication of issues respecting the second cause of action for sexual harassment in violation of Government Code sections 12926, subdivision (t), 12940, subdivision (j)(1), 12960 (untimely claim), and Civil Code section 51.9 (county lacks duty where sexual harassment is between two coworkers). Plaintiff opposed the motion and made objections to statements in the declarations of Robert Seamans and Commander Park. On June 28, 2019, the trial court granted the County's motion for summary adjudication of issues on the grounds Medina was not plaintiff's supervisor, that any directions he gave to plaintiff during the extradition were routine and clerical, not directions requiring independent judgment, and that the incident involved coworker harassment for which the County was not liable under the FEHA. In light of the adverse ruling on the second cause of action, plaintiff requested dismissal of the third, fourth, sixth, seventh and eighth causes of action against the County in order to expedite the appeal. Plaintiff then settled her claims against Medina, resulting in dismissal of the second and fifth causes of action against Medina individually.

On December 5, 2019, plaintiff filed her appeal.

7

Plaintiff's arguments can be summarized as challenges that (1) the court erred in finding Medina was not her supervisor, and that (2) the court erred in finding the County not liable for sexual harassment even if Medina were not her supervisor. In making her argument that the court erroneously ruled Medina was not plaintiff's supervisor, plaintiff also challenges, in passing, evidentiary rulings made by the court.

Summary judgment is appropriate, and the defendant is entitled to judgment as a matter of law, where (1) the defendant carries its initial burden of showing the nonexistence of one or more elements of the plaintiff's claim(s), and (2) the plaintiff thereafter fails to show the "existence of a triable issue of material fact" as to those elements. (*Aguilar, supra,* 25 Cal.4th at pp. 850, 853; *Tsasu LLC v. U.S. Bank Trust, N.A.* (2021) 62 Cal.App.5th 704, 714-715; see Code of Civ. Proc., § 437c, subds. (a)(1), (c), (o)(1), (p).) We independently review a trial court's grant of summary judgment, while "liberally construing the evidence supporting" the nonmoving party and "resolving any doubts" against summary judgment. (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499–500.) Our review focuses on the propriety of the trial court's ruling, not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)

At its foundation, this appeal hinges on the trial court's determination that Medina was not plaintiff's supervisor, within the meaning of the FEHA, and all the associated claims depend on that determination for their survival. Because "supervisor" is defined

by statute (Gov. Code, § 12926, subd. (t)), resolution of the issue depends on statutory interpretation. (See *Carrisales v. Dept. of Corrections* (1999) 21 Cal.4th 1132, 1134-1135 [issue of whether a non-supervisor could be personally held liable under the FEHA, as a matter of statutory interpretation, is a question of law].) As a matter of statutory interpretation, the issue presented is a question of law, which we review de novo. (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1492.)

1.    *Preliminary Matters: Any Challenges to the Trial Court's Evidentiary Rulings Have Been Forfeited.*

Plaintiff challenges several of the trial court's evidentiary rulings but fails to establish any error using legal authority or establishing prejudice. It is well settled that an appellate brief must provide argument and legal authority for the positions taken. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.) "When an appellant fails to raise a point or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]" (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.)

"[E]videntiary questions at summary judgment are ""'subject to the overarching principle that the proponent's submissions are scrutinized strictly, while the opponent's are viewed liberally"'' [citation]." (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 657) "The party challenging an evidentiary ruling bears the burden of establishing the court exceeded the bounds of reason." (*Ibid.*, citing *DiCola v.*

9

*White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679; see also, *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1332.)

Because plaintiff has failed to provide meaningful analysis, or relevant authority, demonstrating reversible error in any of the evidentiary rulings, we consider the issues forfeited. (*Aghaian v. Minassian* (2021) 64 Cal.App.5th 603, 614.)

2. *The Trial Court Correctly Ruled, as a Matter of Law, that the County Was Not Liable Because Medina Was Not Plaintiff's Supervisor.*

The crux of the sexual harassment claim under the Government Code is whether Medina was plaintiff's supervisor. Plaintiff claims alternatively that (1) the County is liable because he was her supervisor; (2) the County is liable because she reasonably believed he was her supervisor; and (3) the County is liable even if Medina was not her supervisor.

The purpose of the FEHA, Government Code section 12900, et seq., is to eliminate the practice of discrimination because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, or genetic information in employment and housing accommodations and to provide effective remedies that will eliminate these discriminatory practices. (Gov. Code, § 12920.) California's FEHA thus prohibits employment discrimination based on sex (Gov. Code, § 12940, subd. (a)), and it expressly and separately prohibits workplace

harassment based on sex. (Gov. Code, § 12940, subd. (j)(1); *State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1039.)

The FEHA prohibits "an employer . . . or any other person" from harassing an employee. (Gov. Code, § 12940, subd. (j)(1), italics added.) It defines a "person" as including "one or more individuals, partnerships, associations, corporations, limited liability companies, legal representatives, trustees, trustees in bankruptcy, and receivers or other fiduciaries." (Gov. Code, § 12925, subd. (d); *Reno v. Baird* (1998) 18 Cal.4th 640, 644.) Government Code section 12926, subdivision (d) defines the term "employer" as including "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly; *the state or any political or civil subdivision of the state, and cities*." (Italics added; *State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 429.) The Act thus covers counties as employers.

Government Code, section 12940 provides that an employer is liable for sexual harassment of an employee by an employee other than an agent or supervisor shall be unlawful only if the employer knows or should have known of the harassment and fails to intervene. However, Government Code section 12940 reflects that harassment by a supervisor is unlawful regardless of whether the employer knows or should have known and fails to intervene. (*Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 415.)

Because the FEHA imposes this negligence standard only for harassment "by an employee, other than an agent or supervisor" (Gov. Code, § 12940, subd. (j)(1)), by

11

implication the FEHA makes the employer strictly liable for harassment by a supervisor. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1041.) Thus, the Supreme Court has held that under the FEHA, an employer is strictly liable for all acts of sexual harassment by a supervisor. (*State Dept. of Health Services v. Superior Court, supra,* at p. 1042.)

For this reason, it is incorrect to say that the term "supervisor" is subject to a liberal interpretation.Because plaintiff's primary theory was that the County was strictly liable for sexual harassment committed by a supervisor, we turn our attention to that issue.

(a)  *The County Is Not Liable Because Medina Was Not Plaintiff's Supervisor.*

Plaintiff argues that Medina was her supervisor within the meaning of the FEHA, rendering the County strictly liable for the sexual assault that occurred during the extradition. We disagree.

Government Code section 12926, subdivision (t), defines the term "supervisor" as it is used in the Act. "'Supervisor' means any individual having the authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the responsibility to direct them, or to adjust their grievances, or effectively to recommend that action, if, in connection with the foregoing, the exercise of that authority is not of a merely routine or clerical nature but requires the use of independent judgment." (Gov. Code, § 12926, subd. (t).) In terms of the FEHA, a supervisor exercises the authority *actually delegated* to him by his

12

employer, such that by making or threatening to make decisions affecting the employment status of his subordinates, his or her actions are properly imputed to the employer whose delegation of authority empowered the supervisor to undertake them. (*Meritor Sav. Bank, FSB v. Vinson* (1986) 477 U.S. 57, 70-71 [106 S.Ct. 2399, 2407, 91 L.Ed.2d 49, 62].)

Under the FEHA, an employer is strictly liable for the harassing actions of its supervisors and agents. (*Chapman v. Enos* (2004) 116 Cal.App.4th 920, 928, citing *State Dept. of Health Services v. Superior Court, supra*, 31 Cal.4th at p. 1042; *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1046.) An employer, however, "is only liable for harassment by a coworker if the employer knew or should have known of the conduct and failed to take immediate corrective action." (*Doe v. Capital Cities, supra,* at p. 1046.)

While this section has been interpreted to mean that the employer is strictly liable for the harassing actions of its supervisors and agents (*Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 415 & 416; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608, fn. 6), it also means that the employer is only liable for harassment by a coworker if the employer knew or should have known of the conduct and failed to take immediate corrective action. Thus, characterizing the employment status of the harasser is very significant. (*Doe v. Capital Cities*, supra, 50 Cal.App.4th at p. 1046.)

Plaintiff argues that Medina was her supervisor because he held a higher rank than she and he handled most of the arrangements for the extradition. She also asserts that because she looked to him as a mentor, she reasonably believed he was her supervisor. Yet plaintiff's assertions are belied by her own testimony at her deposition where she named her direct supervisors, who were responsible for her training, evaluation, and recommendations for pay increases.

Medina, as a Deputy II, was considered the same rank as plaintiff, and while he had more experience, including the necessary experience as a patrol officer to meet the qualifications for the extradition assignment, he was not her supervisor. He did not even work in the same unit as plaintiff, so it would be difficult for him to oversee or direct her activities. The fact he handled air reservations, car rentals, etc., and gave her instructions, was merely routine, and did not involve independent judgment, where Medina simply followed the protocol established by the OCSD. Although plaintiff was not yet familiar with extradition routine, that does not convert Medina's functions during the trip into a supervisory role.

To be considered a supervisor, the exercise of authority cannot be merely routine or clerical in nature; it requires the use of independent judgment. (*Chapman v. Enos, supra,* 116 Cal.App.4th at p. 931.) In *Chapman, supra,* the deputy district attorney directed the plaintiff investigator in virtually all her duties and while the plaintiff there had senior and chief investigators who supervised her work, the plaintiff received virtually no assignments from her direct supervisors, receiving them instead from the

14

defendant, who directed her in virtually all of her duties. (*Id.,* at p. 923.) And while the defendant in that case did not have the authority to promote or evaluate plaintiff, the chief investigator regularly sought his input in evaluating her work. (*Ibid.*) Under those circumstances, the court found the deputy district attorney was plaintiff's supervisor, within the meaning of the FEHA.

Here, on the other hand, plaintiff and Medina did not regularly work together save for a single ride along and the extradition to Texas. He did not supervise her work and had no authority to promote or evaluate plaintiff. By plaintiff's own testimony, other supervisors filled the role of supervisor. The fact he took care of certain aspects of the extradition assignment did not convert him into a supervisor where he simply followed a mandatory protocol. Such duties do not involve independent judgment.

Similarly, in *Doe v. Capital Cities, supra,* the plaintiff alleged that the individual defendant was an associate director of casting at ABC; that ABC was developing television shows that could be suitable for plaintiff; that pursuant to the individual defendant's request, plaintiff interviewed with him for an acting position; that the individual defendant introduced him to his supervisor and told plaintiff that he was his manager; and that the individual defendant gave plaintiff many directions in preparation for auditions. (*Doe v. Capital Cities, supra*, 50 Cal.App.4th at p. 1047.) In addition, the individual defendant, acting as agent for the studio, instructed the plaintiff to attend a brunch at the defendant's home for the purpose of having plaintiff meet ABC executives, such that the event was sufficiently work-related to meet the FEHA elements.

15

Here, Medina did not direct plaintiff to accompany him on the extradition assignment and the bar hopping occurred after work hours. He did not typically work with plaintiff because he was assigned to a different division. Medina, as a Deputy II, which is not a supervisory rank, was considered the same rank as plaintiff, although a Deputy II must have a minimum of one year experience as a law enforcement officer, trained in patrol duties and performing related functions, using more independent judgment in the performance of his own assigned duties. Absent any supervisory assignments vis-à-vis other OCSD employees, a Deputy II is not responsible for supervising lower level employees, so Medina did not qualify as a supervisor under the FEHA.

The trial court correctly determined, as a matter of law, the County was not strictly liable for the sexual harassment because the sexual assault was not committed by a supervisor within the meaning of the FEHA.

(b)　*The County Is Not Liable Based on a Reasonable Belief Medina Was Her Supervisor.*

Plaintiff argues that even if Medina was not a supervisor, he was her temporary supervisor during the extradition trip to Houston and that based on the various examples of directions Medina gave her during the extradition, the County was liable because she reasonably believed he was her supervisor. We disagree.

The FEHA includes a statutory definition of a supervisor, which governs judicial analysis unless the chain of command within a business or entity is unclear. Plaintiff

16

relies on dicta in a footnote in the case of *Chapman v. Enos, supra*, but omits to point out that the relevant footnote expressly does *not* hold that an employer is strictly liable for sexual harassment committed by a person who does not actually have authority over the employee who is harassed. Instead, the footnote reveals that vicarious liability *may* result under certain circumstances, such as those present in the *Chapman* case where the named defendant had daily supervisory authority over plaintiff's work.

There, the court held that the indicia of supervision, oversight, evaluation, and work assignments led to liability, and, in the footnote, discussed the related provision of the Equal Employment Opportunity Commission's enforcement guidance, which discusses who qualifies as a supervisor: "'An individual qualifies as an employee's "supervisor" if: [¶] . . . [¶] (b) the individual has authority to direct the employee's daily work activities.' [Citation.] The guide also explains that a supervisor who does not have actual authority over an employee may nonetheless create vicarious liability for the employer 'if the employee reasonably believed that the harasser had such power. The employee might have such a belief because, for example, the chains of command are unclear. Alternatively, the employee might reasonably believe that a harasser with broad delegated powers has the ability to significantly influence employment decisions affecting him or her even if the harasser is outside the employee's chain of command.' [Citation.]" (*Chapman v. Enos, supra*, 116 Cal.App.4th at p. 933, fn.10.)

Unfortunately, in the present case, plaintiff did not establish any of those circumstances. She did not establish that Medina had "broad delegated powers," or the

17

"ability to significantly influence employment decisions affecting her," and, more importantly, she did not show that the chain of command was unclear within the OCSD. Indeed, as the undisputed facts establish, plaintiff was well-aware of the chain of command, including the identity of her supervisors and she even had to get permission from one of them to participate in the extradition.

Plaintiff's opposing papers did not raise a triable issue of material fact as to whether Medina, a more experienced deputy, was a ranking deputy within the meaning of the OCSD Policy Manual, section 200.7. Nor did she establish a triable issue of material fact as to whether an employee with seniority is necessarily considered—or reasonably believed—to be a supervisor. Nor did plaintiff establish circumstances that would justify a reasonable belief he was her supervisor. After all, she was familiar with the chain of command and knew her supervisors. The statutory definition of supervisor was adequate to inform the trial court and the interpretation of that definition is a question of law. The trial court correctly ruled that the County was entitled to judgment as a matter of law on this theory.

(c)     *The County Is Not Liable for Coworker Sexual Harassment.*

Plaintiff's final claim is that even if Medina were not her supervisor, the County is liable for sexual harassment by a coworker. We disagree.

Under the FEHA, an employer is strictly liable for harassment committed by its agents or supervisors but is liable for harassment committed by its other employees only if it knew or should have known of the harassment and failed to take immediate and

18

appropriate corrective action when reasonably made aware of the situation. (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1377, citing *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1134–1140.) Plaintiff makes no such claims here.

The elements of such a cause of action are: "(1) plaintiff belongs to a protected group; (2) plaintiff was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) respondeat superior." (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608; see also, *Jones v. Department of Corrections & Rehabilitation, supra*, 152 Cal.App.4th at p. 1377.) When the harasser is a nonsupervisory employee, employer liability turns on a showing of negligence (that is, the employer knew or should have known of the harassment and failed to take appropriate corrective action). (Gov. Code, § 12940, subd. (j)(1); *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 707.)

The second cause of action of plaintiff's complaint purports to allege a claim for hostile work environment, but none of the materials or papers presented in opposition to the motion for summary adjudication establish the existence of a hostile environment. Further, none of the evidentiary materials presented in opposition to the motion establishes that the County or the OCSD had any knowledge of the harassment or failed to take corrective action. To the contrary, the undisputed material facts repeatedly refer

19

to the fact that she never felt uncomfortable around Medina, who had never been known to commit any acts of sexual harassment in the past. Moreover, the only other incident involving sexual harassment by a different coworker was not repeated after plaintiff reported it. As such, defendant is entitled to judgment on the second cause of action as a matter of law.

Plaintiff argues that the County is liable because it knew or should have known of Medina's sexual harassment and failed to take corrective action. However, all of the materials submitted in opposition to the motion demonstrate that plaintiff never felt uncomfortable around Medina, that he had never previously made any sexual overtures toward her and had never previously acted in a flirtatious manner. If plaintiff could not have known he would sexually assault her, it goes without saying she has not demonstrated that the County knew or should have known of the situation such that it was obligated to take corrective action.

Plaintiff's remaining theory is that because she reported the assault by Medina a week after the extradition, the County is liable because it knew or should have known of the sexual harassment and failed to take corrective action. This argument is circular and fails to establish judicial error in granting the motion for summary adjudication. The County could not have known about the sexual harassment until plaintiff reported it, and there is no evidence—nor even an allegation in the complaint—that any sexual harassment occurred after the complaint was made, and there is no evidence of prior written complaints about Medina from other employees or third parties. By plaintiff's

own acknowledgment, after a covert phone call to Medina, she did not see or speak to Medina again after the incident. Moreover, the incident occurred away from the workplace, during off-duty hours, and not in a work related context. (*Carriasales v. Dept. of Corrections* (1998) 65 Cal.App.4th 1492, 1508, fn. 7, citing *Capitol City Foods, Inc. v. Superior Court* (1992) 5 Cal.App.4th 1042, 1048-1049.) Bar hopping after hours is not work related, nor was any conduct in the hotel room.

Plaintiff's remaining causes of action were dismissed and the second cause of action does not allege sufficient factual allegations to establish a claim for sexual harassment by a coworker, nor do the undisputed material facts establish that such a claim could be established. The trial court properly granted summary adjudication of the second cause of action.

**DISPOSITION**

The judgment is affirmed. The County is entitled to costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ  
P. J.

We concur:

McKINSTER  
J.

RAPHAEL  
J.

21