Filed 12/29/23  Redondo v. County of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CYNTHIA REDONDO et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES, Defendant and Respondent. | B323026, consolidated with B324398 (Los Angeles County Super. Ct. No. 21STCV07421) |

APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County, William F. Fahey, Judge. Affirmed.

Alexander Morrison + Fehr, Tracy L. Fehr; Romero Law, Alan Romero and Lucas Rowe for Plaintiffs and Appellants.

Peterson, Bradford, Burkwitz, Gregorio, Burkwitz & Su, Avi Burkwitz, Sherry Gregorio, Gayane Muradyan and Jade Yang for Defendant and Respondent.

\* \* \* \* \* \*

Three female Los Angeles County Sheriff's deputies alleged they were subjected to unchecked sexual harassment, discrimination, retaliation, and intimidation by their coworkers at the courthouse where they were stationed.  The trial court dismissed all of the deputies' claims on summary judgment and then granted the employer attorney fees because the deputies persisted in pressing their lawsuit even after it became obvious there was "no evidence" supporting certain key elements of their claims.  We independently agree with the grant of summary judgment and find no abuse of discretion in the award of fees.  Accordingly, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

I.    Facts

A.    *Plaintiffs' employment*

Cynthia Redondo (Redondo), Daisy Funes (Funes), and Jennifer Khanna (Khanna) (collectively, plaintiffs) are all deputies with the Los Angeles County Sheriff's Department (the Department) and, at the times pertinent to the claims in this case, worked at the Norwalk Courthouse (the Courthouse). Khanna began her employment with the Department in January 2001 and was assigned to the Courthouse in September 2016. Funes began her employment with the Department in April 2012 and was assigned to the Courthouse in June 2017.  Redondo began her employment with the Department in October 2007 and

2

was assigned to the Courthouse in April 2020.  Above plaintiffs in the chain of command was a sergeant and, above him, a lieutenant.  Plaintiffs enjoyed their work environment at the Courthouse until the fall of 2019, when Daniel Genao (Genao) and Dolores Guerrero (Guerrero) were transferred to that location.

### B.    *Conduct by Genao*

Genao was assigned to the Courthouse at the end of 2019.

#### 1.    *Inappropriate sexual conduct*

Genao began making sexually inappropriate comments in January 2020.  In front of Funes and Khanna, he made crude remarks about the judge for whom he served as a bailiff.  Funes and Khanna also overheard Genao say that he was "confus[ed]" by Guerrero's sexuality because, though she is a lesbian, she would look at Genao as if she wanted him to "grab her against the wall and just fuck her."

While in the first-floor lockup of the Courthouse—where inmates are held pending their hearings—Genao would make bodily movements and loud noises as if he was having an orgasm. Funes and Redondo witnessed this offensive conduct a few times; Khanna did not personally witness it but was uncomfortable upon later learning it took place.

#### 2.    *Treatment of female deputies*

Plaintiffs recounted other conduct by Genao that they found offensive.  Among other things, Genao:

- once rejected assistance from Redondo, causing her to feel "belittled";
- once contradicted the orders Funes had made to inmates Funes was transporting from lockup to the courtrooms;

3

- mocked Funes on one occasion for obeying COVID-19 social distancing rules on an elevator, and on a different occasion for not participating with other deputies in monitoring a protest because she had a doctor's appointment;

- once yelled at Redondo for completing one of Genao's tasks for him;

- told other deputies that he "lost the little respect" he had for Khanna after she voiced disagreement with a patrol assignment;

- once "threw a tantrum" and used profanity in referring to Khanna after she moved inmates to the first-floor lockup; and

- once criticized a different female deputy for making a mistake and stating that she is "stupid" and "needs to retire." Plaintiffs felt that Genao's treatment of them and other female deputies was different than how he treated their male counterparts. His conduct also appeared to be infectious; a different male deputy called Funes a "fucking bitch" during a debate about politics, and another told her, "[Y]eah motherfucker, there's a new sheriff in town and I suggest that you get the fuck out of here."

3. *Plaintiff's report and the Department's response*

On June 19, 2020, plaintiffs together went to their sergeant's office to report Genao's conduct. The sergeant questioned plaintiffs' allegations and initially attempted to explain away Genao's behavior, suggesting that Genao was just having a "bad day" and that plaintiffs should have first discussed their issues with Genao directly. As required, however, the sergeant referred plaintiffs' complaint to the County Office of Equity, which launched an investigation.

4

A couple of days after they reported Genao, plaintiffs' lieutenant put out radio calls to each of them to come to his office for a meeting, at which he instructed them to submit written statements summarizing their allegations. Plaintiffs prepared their statements on the bank of computers in the Department's office. The lieutenant separated plaintiffs from Genao while the investigation was pending: Specifically, Genao was ordered to remain in the first-floor lockup of the Courthouse, and plaintiffs were ordered to not go to that location, although plaintiffs still occasionally encountered Genao in the Courthouse. To further "defuse the situation," the lieutenant told Genao about plaintiffs' report. The separation order lasted approximately one month.

After completing its investigation, the Department transferred Genao to a different courthouse (and hence away from plaintiffs).

### C. *Conduct by Guerrero*

Guerrero was assigned to the Courthouse in August 2019.

#### 1. *Slashing of Khanna's tire*

On June 23, 2020, Khanna turned on her car to drive home at the end of her shift, and the tire pressure light turned on. Khanna kicked the tires, but did not see anything wrong. She drove home. By the time she arrived, the tire was flat, so Khanna's husband took the car to a tire shop, where a "workman" informed him that the tire had been slashed. Khanna is "not a car person," but concluded that the tire had been slashed by a blade and further concluded that Guerrero was responsible because (1) Guerrero was friends with Genao and showed "resent[ment]" for Khanna's report about Genao by "roll[ing] her eyes" and "scowl[ing]" at Khanna; and (2) Guerrero had a "daily

5

routine" of exercising in the parking structure during a late lunch break that hardly anyone else shared.

The Department investigated, and issued an incident report regarding the damage to Khanna's vehicle, but found no evidence that any Department employee was responsible.

2. *Interaction with Funes*

Funes and Guerrero did not have a pleasant working relationship. According to Funes, Guerrero would "intentionally" make mistakes on paperwork to make Funes's job harder and to "annoy" Funes, and would "single . . . out" Funes with "antagonistic" orders over the radio system. Sometimes Guerrero would bring pastries for all of the deputies except Funes, noting that Guerrero only brings them for her "friends"; Guerrero also organized a potluck despite social distancing rules and "excluded" Funes, Redondo, and Khanna. Guerrero would also "mad dog[]" Funes. Funes complained about Guerrero to her supervisors, and Guerrero was "counseled" about professionalism in the workplace. Funes also reported Guerrero to the sergeant and lieutenant for coming to work with a hangover and taking a nap on the clock.

In September 2021, Funes did a pat-down search of an inmate and found no contraband. When Guerrero later searched the same inmate, Guerrero found drugs. When a senior deputy confronted Funes about not finding the drugs, Funes argued with the senior deputy that it was not *her* job to conduct a thorough search. When Guerrero got fed up waiting for Funes to finish arguing with the senior deputy, Guerrero dropped the drugs into an open pocket on Funes's uniform, said, "[H]ere are your drugs" to be booked into evidence, and walked away.

6

**D.** *Khanna's vacation request for religious observance*

Khanna practices Judaism and attends temple services for the holiest Jewish holidays. Khanna's requests for time off to observe the Passover holiday, as well as other Jewish holidays, were consistently granted by the Department for the 10 to 15 years prior to 2020. The Department initially granted her requests to use accrued vacation time on April 9, 2020 and April 16, 2020 to observe the Passover holiday, but her requests were subsequently denied when the Department issued a policy on March 12, 2020 cancelling "all vacations" "in light of the threat of" COVID-19. Khanna used accrued sick time instead to observe Passover.

## II. Procedural Background

### A. *Plaintiffs' complaint*

Plaintiffs sued the County of Los Angeles (the County) on February 24, 2021. In the operative first amended complaint, all three plaintiffs alleged that Genao's conduct and the Department's response gave rise to causes of action for (1) sex/gender harassment under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); (2) discrimination on the basis of sex/gender under FEHA; (3) retaliation under FEHA and Labor Code section 1102.5; and (4) failure to prevent discrimination, harassment and retaliation under FEHA. Khanna also asserted separate causes of action for (1) religious creed discrimination under FEHA, based on the denial of her vacation request to observe Passover; and (2) violations of the Tom Bane Civil Rights Act (Bane Act) (Civ. Code, § 52.1 et seq.) and the Ralph Civil Rights Act of 1976 (Ralph Act) (*id.*, § 51.7 et seq.), based on the damage to her tire.

**B.** *The County's motion for summary judgment*

The County moved for summary judgment. After further briefing, and an initial ruling by the trial court granting plaintiffs an opportunity to cure the deficiencies in their over 300-page separate statement, the court granted the County's motion.

The trial court concluded that plaintiffs "fail[ed] to present competent evidence showing that there are *material* disputed issues to be tried." (Italics in original.) The court ruled that plaintiffs' sex/gender harassment claim failed as a matter of law because the conduct alleged as harassment was committed by a nonsupervisory coworker, and on the undisputed facts, was not attributable *to the Department*. The court ruled that plaintiffs' two claims for retaliation as well as their claim for sex/gender discrimination failed as a matter of law because the undisputed facts established that they did not suffer any adverse employment action. The court rejected Khanna's separate claims because the undisputed facts showed that the Department *did* accommodate her religious observance and because Khanna's belief that Guerrero or any other deputy was responsible for slashing her tire was "mere speculation" based entirely on "inadmissible hearsay." The court rejected plaintiffs' failure to prevent FEHA harassment, discrimination and retaliation claims as wholly derivative of their other, unsuccessful FEHA claims.

**C.** *The County's motion for attorney fees*

On August 26, 2022, the County filed a motion seeking $28,215 in attorney fees incurred in connection with the summary judgment motion and trial preparation.[1] After further

---

1    The County also requested $40,989.84 in costs, but the trial court denied that request as untimely and the County does not challenge that ruling on appeal.

8

briefing and a hearing, the trial court issued a ruling granting the County's motion.

### D. *Plaintiffs' appeals*

Plaintiffs appealed the trial court's judgment for the County and the trial court's attorney fee order. We consolidated the two appeals.

## DISCUSSION

Plaintiffs argue that the trial court erred in granting summary judgment on their claims and awarding the County attorney fees.

## I. Ruling on Summary Judgment

Summary judgment is appropriate when the moving party shows "[it] is entitled to a judgment as a matter of law" (Code Civ. Proc., § 437c, subd. (c)) because, among other things, the nonmoving party (here, plaintiffs) cannot establish "[o]ne or more of the elements of the[ir] cause of action" (*id.*, subds. (o)(1) & (p)(2)). (*QDOS, Inc. v. Signature Financial, LLC* (2017) 17 Cal.App.5th 990, 998.) In this way, summary judgment serves as "'a vehicle to weed the judicial system of an unmeritorious case.'" (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 299.) Summary judgment should be denied only when there are "genuine" or "triable" issues of fact to be resolved at trial—that is, when "the evidence would allow a reasonable trier of fact to find . . . in favor of the party opposing the [summary judgment] motion." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860, (*Serri*), citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845; Code Civ. Proc., § 437c, subds. (f)(1), (o)(1) & (p)(2).) In applying this standard, we independently review the evidence before the trial court except the evidence to which an objection was made and sustained (and when that evidentiary

9

ruling is not challenged on appeal), and we view that evidence in the light most favorable to the nonmoving party, "resolving . . . any doubts" against summary judgment.  (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 415; *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1113 [where party opposing summary judgment does not challenge trial court's evidentiary ruling to evidence, we consider that evidence """"properly excluded"""].)  Because our review is de novo, our focus is the trial court's *ruling*, and we may therefore affirm on any ground regardless of whether the trial court relied on that ground. (*Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1057.)

As a threshold matter, plaintiffs assert that the trial court unfairly enforced the procedural requirements attendant to motions for summary judgment by, in their view, unfairly criticizing them for filing a 293-page response to the County's separate statement of undisputed facts that included an additional 519 new factual assertions and that was riddled with procedural errors.  (See Cal. Rules of Court, rule 3.1350(f)(2) [setting forth requirements of opposition separate statement]; Code Civ. Proc., § 437c, subd. (b)(3) [failure to comply with requirements for opposition separate statement "may constitute a sufficient ground, in the court's discretion, for granting" summary judgment].)  We reject this assertion for two reasons.  First, any defects in the court's procedural analysis are irrelevant because we are engaging in de novo review by looking at *the admissible evidence* in the record rather than whether—and how—that evidence was set forth in the parties' separate statements. Second, the trial court did not commit any error that affected its

ruling on the merits because the court also looked at *the evidence* rather than focusing on the staggeringly inefficient way in which plaintiffs chose to summarize it. (See *Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 72-73 [purpose of separate statement defeated where trial court "is forced to wade through stacks of documents" and "cull through the arguments" to determine "what remains at issue"].)

### A. *Sex/gender harassment claim (by all plaintiffs)*

To prevail on a claim for sexual harassment under FEHA, a plaintiff must establish that (1) the employer subjected the plaintiff to verbal or physical contact of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently "severe *or* pervasive" to alter the terms and conditions of the plaintiff's employment, thereby creating an abusive working environment. (*Beltran v. Hard Rock Hotel Licensing, Inc.* (Dec. 5, 2023, G062736) __ Cal.App.5th __ [2023 Cal.App.Lexis 941]; *Sheffield v. Los Angeles County* (2003) 109 Cal.App.4th 153, 160-161; *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283 (*Lyle*); *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1045; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 130; see also Gov. Code, §§ 12940, subd. (j), 12923.)[2]

---

[2] Because, as explained below, the resolution of plaintiffs' claims turns on whether the harassment is attributable to the employer—and *not* on whether the harassment itself is sufficiently "severe or pervasive" to constitute harassment—our Legislature's recent clarification of the standard of what constitutes harassment and its general pronouncement that "[h]arassment cases are rarely appropriate for disposition on summary judgment" is not implicated in this case (Gov. Code, § 12923, subds. (b) & (e)); we are effectively assuming plaintiffs were subjected to unwelcomed conduct of a sexual nature by

11

Whether the *employer* has subjected the plaintiff-employee to harassment—and thus can be liable for that harassment—depends on *who* is doing the harassment: If the harasser is a "supervisor," the employer is strictly liable for any conduct by that individual; if the harasser is *not* a supervisor, the employer is liable only if the employer (1) "knew or should have known of the harassing conduct," and (2) "failed to take immediate and appropriate corrective action." (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1040-1041; *Chapman v. Enos* (2004) 116 Cal.App.4th 920, 928; see also Gov. Code, § 12940, subd. (j)(1).)

With respect to the second element of "immediate and appropriate corrective action," an employer avoids liability for sexual harassment by a nonsupervisory co-employee under FEHA by taking "prompt, reasonable and efficacious remedial action" in response to an employee's harassment complaint. (*Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th 1174, 1185.) "The employer's obligation to take prompt corrective action requires (1) that temporary steps be taken to deal with the situation while the employer determines whether the complaint is justified and (2) that permanent remedial steps be implemented by the employer to prevent future harassment once the investigation is completed." (*Bradley v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1612, 1630 (*Bradley*).) "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is

Genao that was severe and pervasive, and focus entirely on examining whether that harassment is attributable to the County.

12

justified." (*Swenson v. Potter* (9th Cir. 2001) 271 F.3d 1184, 1193; *Mathieu*, at p. 1185.) To fulfill this function, the investigation need not be "perfect"; it is enough that the investigation is a "reasonable" one that is neither "rigged to reach a pre-determined conclusion" nor "otherwise conducted in bad faith." (*Swenson*, at pp. 1197, 1193, 1196.) Thus, "when harassment is by a nonsupervisory employee, an employer's liability is predicated not on the conduct itself, but on the employer's response once it learns of the conduct." (*Bradley*, at p. 1631.)

Both in their operative complaint and on appeal, plaintiffs base their FEHA harassment claim solely on Genao's conduct. Because it is undisputed that Genao is *not* a supervisor, plaintiffs' FEHA harassment claim *against the County* turns on whether the Department (1) knew or should have known of Genao's conduct, and (2) failed to take "immediate and appropriate action" once it learned of that conduct.

The undisputed facts establish both that (1) the Department had no knowledge of Genao's conduct until plaintiffs reported it in June 2020, and (2) the Department thereafter took "immediate and appropriate action" in response to plaintiffs' report. With regard to the second point, after plaintiffs reported Genao's conduct to their sergeant, the sergeant reported it to the lieutenant, who then referred the complaint to the County Office of Equity; while the Office of Equity investigated plaintiffs' report, the Department took steps to immediately halt any further harassment by physically separating Genao and plaintiffs into different parts of the Courthouse; and once the Office of Equity completed its investigation, the Department "involuntarily transferred" Genao to a different courthouse, thereby eliminating the danger of further harassment by Genao.

13

In sum, the Department's response to plaintiffs' complaints was reasonable as a matter of law, and thus precludes liability *against the County*.

Plaintiffs raise several arguments, only four of which speak to the Department's liability for harassment inflicted by a nonsupervisory co-employee.

First, plaintiffs argue that the sergeant was "openly antagonistic" toward plaintiffs when they initially reported Genao's misconduct, the sergeant did not take "real notes" during the June 2020 meeting, and the lieutenant at one point thereafter put his finger to his lips to "shush" Redondo. However, any factual dispute about whether the sergeant and lieutenant engaged in this conduct is not material because it is undisputed that, despite any inappropriate behavior that occurred while receiving plaintiffs' report, the two supervisors did alert the Office of Equity, which conducted an investigation and took disciplinary action against the offender. (Accord, *Banks v. Dominican College* (1995) 35 Cal.App.4th 1545, 1551 (*Banks*) [plaintiff "may not avoid summary judgment by attempting to generate disputes of fact as to issues which are not material to the legal theories and claims in issue"].)

Second, plaintiffs argue that their privacy rights were violated when the lieutenant called them over the common radio channel, directed them to prepare written statements on communal computers, and disclosed their complaint to Genao despite a County policy to keep reports of misconduct anonymous. These facts are not material because plaintiffs fail to draw any connection between them and the appropriateness of the Department's corrective action. (*Banks, supra*, 35 Cal.App.4th at p. 1551.) Plaintiffs' theory that the radio call coupled with their

14

use of the communal computers revealed to fellow deputies that plaintiffs had made a complaint about Genao is based on mere speculation; there is no evidence that the radio call referred specifically to their complaint of misconduct, no evidence that anyone saw or figured out what they were typing on the computers, and no evidence that anyone else "connected the dots" as plaintiffs now speculate they must have. (*Santa Clara Valley Water Dist. v. Century Indemnity Co.* (2023) 89 Cal.App.5th 1016, 1035 [party opposing summary judgment may not rely on inferences "'derived from speculation, conjecture, imagination, or guesswork'"].) Plaintiffs' assertion that the County violated its own policy by letting Genao know about their report is unsupported by any admissible evidence because (1) the trial court denied their request to judicially notice the policy, and they have not challenged that ruling on appeal; and (2) the only other evidence of the policy is their own recollection of the allegedly written policy, which is inadmissible hearsay. Indeed, the sole admissible evidence is Redondo's deposition testimony that complaints are "usually" not disclosed to the subject; it is therefore undisputed that disclosure is sometimes warranted and that the disclosure here was made to "defuse" the situation, such that there was no violation of plaintiffs' privacy rights.

Third, plaintiffs argue that the sergeant's attempts to discourage them from pursuing a complaint against Genao *combined with* the lieutenant's disregard for their privacy establish ratification by the County of the harassment. To be sure, an employer's "failure to intervene effectively to prevent or end sexual harassment in the workplace by a fellow employee can amount to a ratification of the misconduct for which the employer may be held liable." (*Birschtein v. New United Motor*

15

*Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 1007; *Thomas v. Regents of University of California* (Nov. 29, 2023, A164550) __ Cal.App.5th __ [2023 Cal.App.Lexis 925].)  But here, the sergeant and lieutenant *did* intervene to end the sexual harassment by taking corrective action.

Fourth, plaintiffs argue that the Department's investigation and corrective action was "ineffectual" because plaintiffs would sometimes still encounter Genao outside the first-floor lockup and because Funes heard him, through a closed door, make a sexual noise one additional time after plaintiffs complained.  Neither of these facts is material.  The Department had "wide discretion in choosing how to minimize contact between" plaintiffs and Genao, and while ordering them to stay on separate floors of the Courthouse may not have been a perfect solution, it was a *reasonable* one pending the investigation of plaintiffs' report.  (*Bradley*, *supra*, 158 Cal.App.4th at p. 1630.)  Moreover, plaintiffs do not claim that Genao engaged in any harassing conduct when they happened to encounter him; in fact, on one occasion when Funes encountered Genao, it was because Funes volunteered to assist him with a female inmate.  As for Funes overhearing Genao's sexually inappropriate conduct through a closed door, there is no evidence that Genao directed his conduct, though unquestionably distasteful, at any coworker who was offended by that conduct.  (See *Lyle*, *supra*, 38 Cal.4th at p. 285 [a plaintiff "must show that the harassment directed at others was in her immediate work environment, and that she personally witnessed it"]; *Yuknis v. First Student, Inc.* (7th Cir. 2007) 481 F.3d 552, 555-556 ["The more remote or indirect the act claimed to create a hostile working environment, the more attenuated the inference that the worker's working environment

was actually made unbearable . . ."]; *Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 21-22 [requiring the victim to "subjectively perceive" the work environment as "objectively hostile" to trigger a Title VII violation]; cf. *Bradley*, at p. 1640 [reasonableness of employer's remedial measures "'will depend on its ability to stop harassment by the person who engaged in harassment'"].)  Nor is there any evidence that Funes lodged another complaint about Genao's conduct.

## B.     *Sex/gender discrimination claim and retaliation claims (by all plaintiffs)*

To prevail on claims of sex/gender discrimination under FEHA, retaliation under FEHA, and whistleblower retaliation under Labor Code section 1102.5, a plaintiff must establish—among other things—that her employer subjected her to an adverse employment action.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*) [discrimination]; Gov. Code, § 12940, subd. (a) [same]; *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*) [retaliation under FEHA]; Gov. Code, § 12940, subd. (h) [same]; *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 712 (*Lawson*) [whistleblower retaliation under Labor Code section 1102.5].)  An adverse employment action is defined as an action by the employer that "materially" and "adverse[ly]" "affect[s] the terms and conditions of employment." (*Yanowitz*, at p. 1036.)  Reaching beyond firing, demoting, or refusing to promote the employee, adverse employment actions also include actions by the employer that are "reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion."  (*Id.* at pp. 1054-1055; *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 423.)  However, those

actions must be material, and materiality is adjudged objectively. (*Momah v. Dominguez* (6th Cir. 2007) 239 Fed.Appx. 114, 123-124; *Yanowitz*, at p. 1054 ["objective perspective"]; *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1063 ["'objective evidence'"].)  Thus, actions by an employer that do no more than subjectively "upset" or "'humiliat[e]'" the employee, or are "'not to [her] liking,'" are not adverse employment actions.  (*Yanowitz*, at p. 1054; *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 386, 393 (*McRae*); *Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 92.)  In addition, there must be a "'causal link'" between the protected activity and the employer's adverse employment action, which often is shown by a temporal relationship between the two.  (*Light*, at p. 91.)

Plaintiffs point to over 20 incidents at their work environment at the Courthouse, contending that they constitute adverse employment actions that are causally linked to their report of Genao.[3]  They do not.  We group these incidents into

---

[3]    The County asserts that plaintiffs' laundry list of adverse employment actions exceeds the scope of the allegations in their operative complaint.  We agree that plaintiffs have unfairly moved the target, but we nevertheless elect to exercise our discretion to address why the entirety of the actions proffered by plaintiffs fail to constitute adverse employment actions as a matter of law.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 ["The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment'"]; *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648 [a "'plaintiff cannot bring up new, unpleaded issues in . . . her opposing papers'"; "'counterdeclarations are no substitute for amended pleadings'"].)

four buckets, each of which we discuss separately: (1) actions suffered by all plaintiffs, (2) actions suffered by Funes, (3) actions suffered by Redondo, and (4) actions suffered by Khanna.

1.     *Actions suffered by all plaintiffs*

All plaintiffs claim they suffered three of the same adverse employment actions—namely, (1) having to continue to work with Genao; (2) being prevented from performing their duties because they could not access the first-floor lockup; and (3) being "ostracized and shunned" by their fellow deputies when, for example, the deputies refused to share an elevator with plaintiffs, spoke to them in only "short, snappy replies," and denied them backup.

None of these actions constitute adverse employment actions as a matter of law. First, Genao's conduct after plaintiffs made their report cannot be considered an adverse employment action by their *employer* because, as explained above, the Department took reasonable action to investigate and then discipline Genao and plaintiffs did not make the Department aware of any further misconduct by Genao; as a result, Genao's conduct is not attributable *to the County*. Second, the Department's action in telling plaintiffs not to access the first floor was not an adverse employment action; it was designed to separate plaintiffs from the coworker about whom they complained, which is a long-accepted and reasonable step to take during the pendency of an investigation. Plaintiffs' assertion that the very action an employer takes to eliminate the danger of further harassment pending an investigation simultaneously constitutes an adverse employment action puts an employer in an impossible, no-win situation. We also reject plaintiffs' related contention that inconsistencies in how the Department described

19

the separation to them is evidence of pretext, as it is undisputed that they were informed that the separation was a direct result of their complaint and intended to halt continued harassment during the pendency of the investigation. Third, ostracism or a pattern of social slights by coworkers does not materially affect the terms, conditions, or privileges of employment. (*Brooks v. City of San Mateo* (9th Cir. 2000) 229 F.3d 917, 929 ["Because an employer cannot force employees to socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an adverse employment action"]; *Yanowitz, supra*, 36 Cal.4th at p. 1054 ["a pattern of social slights by . . . coemployees" does not constitute adverse employment action]; *Lyle, supra*, 38 Cal.4th at p. 295 ["FEHA is 'not a "civility code"'"].)

### 2. *Actions suffered by Funes*

Funes claims she alone suffered three other adverse employment actions—namely, (1) experiencing harassment by Guerrero, (2) receiving write-ups and other discipline, and (3) being transferred to the Pasadena courthouse far from her home. We conclude, as a matter of law, that none of these constitute adverse employment actions causally linked to Funes's complaint about Genao.

First, the mutual dislike between Guerrero and Funes amounts to nothing more than "[m]inor or relatively trivial" conduct "that, from an objective perspective, [is] reasonably likely to do no more than anger or upset an employee" and, as such, "cannot properly be viewed" as an adverse employment action. (*Yanowitz, supra*, 36 Cal.4th at p. 1054; *Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 735 [FEHA "'"is not a shield against harsh treatment at the workplace"'"]; see also *Malais v. Los Angeles City Fire Dept.*

20

(2007) 150 Cal.App.4th 350, 357 [conduct does not constitute an adverse employment action simply because it is ""contrary to the employee's interests or not to the employee's liking""].) What is more, nearly all—if not all—of Guerrero's conduct cited by Funes occurred *before* plaintiffs engaged in protected activity by reporting Genao and therefore cannot serve as an adverse employment action in retaliation for that protected activity.

Second, the undisputed facts establish that the discipline Funes received was for legitimate, nonretaliatory reasons. (*Galvan v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 549, 558-559 [employer moving for summary judgment has burden to show that adverse employment action was based on legitimate, nonretaliatory factors]; *Serri, supra,* 226 Cal.App.4th at p. 861 [""legitimate" reasons [citation] . . . are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*,'" italics in original].) Specifically:

● In October 2020, Funes received a performance log entry (PLE)—which is a note, whether positive or negative, that is placed in the deputy's personnel file for one year—because she made hurtful comments about Guerrero's sexual orientation. Funes's challenge to this PLE was denied.

● In November 2020, Funes received a PLE for failing to follow a judge's specific instructions for uncuffing an inmate. Funes's challenge to this PLE was also denied.

● In January 2022, Funes was suspended for making various sexual remarks about a judge, a fellow deputy, and the sergeant's son during the period of January 2020 to May 2020.

● In February 2022, Funes was suspended because she had improperly stored an inmate's backpack in January 2021 despite orders to "book" the found property.

Because the County met its burden of showing the Department had legitimate, nonretaliatory reasons for Funes's discipline, the burden shifted to Funes to show that those reasons were """untrue or pretextual""" or that the Department acted with a retaliatory animus. (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 965.) Other than her own self-serving declaration stating she did not engage in the conduct underlying the PLEs and suspensions, Funes offered no evidence challenging the County's proof. This was insufficient to create a triable issue of material fact. (*Serri, supra,* 226 Cal.App.4th 830 [plaintiff's burden not met by mere speculation]; *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 ["plaintiff's subjective beliefs" and "uncorroborated and self-serving declarations" "do not create a genuine issue of fact"].)

Third, Funes was transferred to the Pasadena courthouse sometime after September 2021—over a year after plaintiffs reported Genao's conduct. There is no causal link between that protected activity and Funes's transfer. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 [retaliatory motive proved by showing that """adverse action followed within a relatively short time""" after protected activity].)

3. *Actions suffered by Redondo*

Redondo claims she alone suffered one other adverse employment action—namely, being "shushed" by the lieutenant. A rude comment—or, for that matter, a rude gesture—is not actionable, particularly where the Department was simultaneously engaging in reasonable corrective action.

(*McRae, supra*, 142 Cal.App.4th at pp. 386, 392-393 [the workplace is not an ""idyllic retreat[]""]; *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 231 ["stray remarks that are unconnected to employment decisionmaking" are unactionable]; *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 810 ["'single, isolated discriminatory comment' by plaintiff's immediate supervisor was insufficient"].)

4.    *Actions suffered by Khanna*

Khanna claims she alone suffered three other adverse employment actions—namely, (1) the slashing of her tires; (2) having the investigation into that incident "sabotaged" by her supervisors; and (3) being denied time off to observe the Passover holiday (which occurred *before* plaintiffs engaged in protected activity and therefore cannot constitute an adverse employment action in retaliation for that protected activity).  For the reasons discussed in detail below in Subsection I.D., Khanna did not suffer an adverse employment action because her theory that the Department is to blame for the damage to her vehicle is based on mere speculation.  (*Advent, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA* (2016) 6 Cal.App.5th 443, 459 [""Speculation . . . is not evidence" that can be utilized in opposing a motion for summary judgment"].)  It is also undisputed that the Department did not, as Khanna claims, "withh[o]ld" evidence of the slashing because the Department presented a complete copy of the video of the parking area to Khanna herself.  And, although Khanna's vacation time was cancelled due to the application of a facially neutral policy, she was able to observe the holiday by using sick time (*Guz, supra*, 24 Cal.4th at p. 354, fn. 20 [discrimination may be found where a facially neutral policy has a disproportionate adverse effect on members of

23

protected class]; *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175 ["'a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct'"]).

5. *Plaintiffs' further arguments*

Plaintiffs raise two further arguments.

They argue that we should consider all of the actions discussed above "collectively," even if each action is not on its own sufficient to constitute an adverse employment action. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1058.) We disagree. The actions cited by plaintiffs are unlike those found to have a cumulative effect in *Yanowitz*, which were compiled to build a case against that employee to "place[] her career in jeopardy." (*Yanowitz*, at p. 1060.) Here, however, plaintiffs presented no evidence or argument for why any of the actions discussed above cumulatively affected the terms and conditions of their employment. Although the question of whether an employer's conduct constitutes an adverse employment action is generally a factual one (*id.* at p. 1052), this case presents a situation in which we can conclude, as a matter of law, that the conduct is insufficient—separately or collectively—to amount to an adverse employment action. (See *St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 318-319 [summary judgment affirmed where plaintiff "failed to provide admissible evidence to create a triable issue of fact" to show adverse employment action].)

Plaintiffs also argue that the trial court was required to deny summary adjudication of their whistleblowing retaliation claim under Labor Code section 1102.5 because the County did not invoke the proper burden-shifting standard set forth in *Lawson*, *supra*, 12 Cal.5th 703. The burden-shifting standard in

24

*Lawson* is irrelevant to our conclusion that plaintiffs suffered no adverse employment action.

### C. *Khanna's separate claims*

#### 1. *Religious creed discrimination*

To prevail on a claim of religious creed discrimination under FEHA as alleged by Khanna, a plaintiff must establish her employer (1) "discriminate[d]" against her "in terms, conditions, or privileges of employment"; (2) due to "a conflict between [her] religious . . . observance and any employment requirement." (Gov. Code, § 12940, subd. (*l*)(1).)  However, there is no FEHA liability if the employer "demonstrates that it has explored any available reasonable alternative means of accommodating the religious . . . observance . . . , but is unable to reasonably accommodate the . . . observance without undue hardship." (*Ibid.*)  For these purposes, "undue hardship" means "significant difficulty or expense" "in light of" several factors, including "[t]he type of operations, including the composition, structure, and functions of the workforce of the entity."  (Gov. Code, § 12926, subd. (u).)

The undisputed facts establish that the Department had historically granted Khanna's requests for time off for the Jewish High Holidays, including Passover; that the Department initially granted her request for two dates in April 2020 to observe Passover; that the Department later denied her request after the issuance of a Department-wide edict cancelling *all* vacation time through April 30, 2020 due to the need for deputies to be available to assist if necessary given the historical uncertainty about what to do in response to the outbreak of COVID-19 in March 2020; and that Khanna's supervisors nevertheless allowed Khanna to take the days off, albeit using her sick time.

On these undisputed facts, Khanna's religious discrimination claim fails for two reasons. First, the Department showed that it *did* reasonably accommodate Khanna's request by allowing her to take time off for her religious observance. Khanna counters that she had to "fight" to achieve that accommodation, but the evidence of her meeting with supervisors to receive the days off despite the Department-wide edict reveal no discriminatory animus. Khanna also counters that having to use her sick time (rather than her vacation time) was somehow an unreasonable accommodation by depriving her of the two days of sick time in case she needed it, but she did not introduce any evidence to show that the types of time off were not equivalent. Second, and even if we assume that the Department's accommodation was unreasonable, the Department also established that it would suffer undue hardship by allowing Khanna to take vacation time because the Department would face "significant difficulty" discharging its primary function of ensuring public safety if, during the uncertainty surrounding the unprecedented outbreak of COVID-19, it did not have "all hands on deck" to respond to any emergencies.

Khanna's chief response is that the Department did not apply its Department-wide edict consistently because it allowed a different deputy with a nonrefundable vacation to go on his booked vacation during the "no vacation" window. This does not create a triable issue of material fact because there is no evidence that the Department's accommodation to that deputy was any different from the accommodation it offered to Khanna—namely, the opportunity to use sick time in lieu of vacation time. Absent such evidence, there is no differential treatment and no discrimination.

### 2. *The Bane Act and the Ralph Act*

The Bane Act prohibits a person from "interfer[ing] by threat, intimidation, or coercion . . . with [the plaintiff's] exercise or enjoyment . . . of [her constitutional] rights" with the "specific intent to violate [her civil] rights." (Civ. Code, § 52.1; *Schmid v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 483; *Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1290 (*Gabrielle A.*).) The Ralph Act prohibits a person from threatening or committing violent acts against the plaintiff or her property with a discriminatory motive. (Civ. Code, § 51.7; *Gabrielle A.*, at p. 1291; *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 880-881.) As these elements suggest, a plaintiff can prevail on either claim only if she establishes that the defendant—here, the County—engaged in a threatening or violent act.

The undisputed facts do not create a triable issue that anyone employed *by the County* was responsible for slashing Khanna's tire, which is the sole basis for her Bane and Ralph Act claims. Khanna's sole "evidence" that the County is liable is her belief that Guerrero was the culprit because the incident occurred shortly after plaintiffs reported Guerrero's "friend" Genao and her belief that her supervisors sabotaged the investigation into the incident, but she offers no admissible evidence other than her own speculation to support that belief. Because "'[s]peculation . . . is not evidence,'" it "cannot create a triable issue of material fact." (*McHenry v. Asylum Entertainment Delaware, LLC* (2020) 46 Cal.App.5th 469, 479; *Gabrielle A.*, *supra*, 10 Cal.App.5th at p. 1291 [declining to "substitute speculation for evidence" on Ralph Act claim].) Indeed, there is not even any admissible evidence that Khanna's tire was slashed (as opposed to becoming flat), as

27

the sole evidence she offered of slashing was the opinion a "workman" at the tire shop relayed through her husband, and Khanna does not on appeal challenge the trial court's proper exclusion of this double hearsay.

## D. *Derivative claim for failure to prevent harassment, discrimination, or retaliation*

An employer cannot be liable for failing to prevent harassment, discrimination, or retaliation under FEHA absent a finding that such an actionable unlawful employment practice actually occurred. (*Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1317-1318.) Because we affirm the judgment in favor of the County on plaintiffs' underlying causes of action for harassment, discrimination, and retaliation, we must affirm the judgment on their cause of action for failure to prevent harassment, discrimination, or retaliation.

## II. **Ruling on Attorney Fees**

### A. *Applicable law*

Attorney fees are allowable as costs to a prevailing party when authorized by statute. (Code Civ. Proc., §§ 1021, 1033.5, subd. (a)(10)(B).) FEHA authorizes an award of reasonable attorney fees to an employer who prevails in a FEHA action, but only if the trial court finds that "the [plaintiff-employee's] action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." (Gov. Code, § 12965, subd. (c)(6); *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985.) "An action is not frivolous simply because the plaintiff[s'] FEHA claim failed." (*Baker v. Mulholland Security & Patrol, Inc.* (2012) 204 Cal.App.4th 776, 784.) But an action may "rise to the level of frivolity required to support" an award of fees to an employer-defendant if, for example, the

28

plaintiff failed altogether to "present[] a colorable claim." (*Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859, 870, 873-874 (*Rosenman*).)

We review a trial court's award of attorney fees to an employer who prevailed in a FEHA action for an abuse of discretion. (*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387 (*Cummings*); *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 101-102.)

### B. *Pertinent facts*

In support of its motion for attorney fees, the County submitted evidence—for the first time—of plaintiffs sending text messages in February and March 2020 (and thus after some of the harassment had started in January 2020) to fellow deputies of a sexual and racially insensitive nature. For example, Khanna sent a picture of a piece of meat at Walmart captioned "a cow dick"; Funes sent an image of a woman riding a toy horse and explained, "[T]his is going to be me in a few," with Khanna responding, "[R]ide that verga girl," which she translated as "[S]panish slang" for penis; and Khanna sent a picture mocking the appearance of an Asian person. Plaintiffs did not contest any of this evidence in opposing the attorney fees motion, and instead argued that their lawsuit was not frivolous "'merely [because they] failed to achieve success'" on summary judgment.

The trial court awarded the County $28,215 in fees, concluding that "plaintiffs' case was objectively without foundation when brought" or, alternatively, plaintiffs "knew or should have known they had no admissible evidence in opposition" to the summary judgment motion. The court explained that "plaintiffs had no evidence of adverse employment actions or retaliation," that Khanna "had no admissible evidence

29

about her alleged tire-slashing incident," and that Khanna "had no evidence supporting a claim of religious discrimination." The court went on to observe that, "[i]nstead of being sexually harassed," "plaintiffs engaged in vulgar and sexualized comments with their alleged harassers."

### C.   *Analysis*

The trial court did not abuse its discretion in concluding that plaintiffs' claims were "frivolous, unreasonable, or groundless" for purposes of awarding the County its requested fees. As discussed in detail above, the record on summary judgment showed a complete lack of factual support for at least one required element of each of plaintiffs' claims. (E.g., *Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1200 [fees appropriate where no evidence of discrimination]; see also *Robert v. Stanford University* (2014) 224 Cal.App.4th 67, 73 (*Robert*) [fees appropriate where no evidence except plaintiff's opinion].) To be sure, plaintiffs presented a plethora of evidence bearing on the harassment by Genao that they endured in support of their harassment claim, but they lacked evidence raising any dispute of material fact on the separate element showing that the *County* was legally responsible for Genao's conduct under FEHA due to its failure to take corrective action once notified of that conduct. Plaintiffs lacked evidence raising any dispute of material fact on the element of whether they suffered any adverse employment action, which was an essential element of their discrimination and retaliation claims. And Khanna lacked evidence raising any dispute of material fact on the elements of whether her religious observation was reasonably accommodated and whether the County had any causal responsibility for Khanna's tire damage. Importantly, the trial

30

court limited its award of fees to those incurred by the County in litigating its summary judgment motion—that is, after discovery had closed and it became obvious that the evidence supporting these elements was completely lacking. Just because a plaintiff may raise a triable issue of fact as to *some* elements of a claim does not immunize that plaintiff from a finding that the claim is frivolous where, as here, the plaintiff has failed to adduce any evidence as to *other elements* of that claim and that claim therefore fails as a matter of law.

Plaintiffs resist our conclusion with three arguments. First, they argue that they presented "voluminous evidence at summary judgment." But *quantity* is not a substitute for *quality,* and the quality of evidence they presented did not raise any triable issues of material fact because, as noted above, at least one key element of every claim was entirely absent. (Cf. *Cummings, supra,* 11 Cal.App.4th at p. 1388 [reversing fee award for defendant because plaintiff had "presented some evidence of age discrimination"].) Second, plaintiffs argue that the trial court "essentially found" that their case "lacked merit" rather than that it was "frivolous." They are incorrect; the court expressly found that plaintiffs had "no evidence" supporting the necessary elements detailed above and it therefore "was improper" for them to "continue" to engage in "very heavy litigation" of the case. (See, e.g., *Bass v. E.I. DuPont de Nemours & Co.* (4th Cir. 2003) 324 F.3d 761, 767 [plaintiff's discrimination claims "lacked any foundation in the record apart from her own conclusory assertions"].) Third and lastly, plaintiffs argue that the trial court failed to make "express written findings" on the factors in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission* (1978) 434 U.S. 412, and *Cummings, supra,* 11

31

Cal.App.4th 1383. (See *Rosenman*, *supra*, 91 Cal.App.4th at p. 868.) We reject this argument because (1) plaintiffs forfeited it by waiting until their reply brief to raise it (*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 646); (2) plaintiffs fail to argue that the purported lack of findings caused them any prejudice (*Robert*, *supra*, 224 Cal.App.4th at pp. 71-72); and (3) the court's written ruling here sufficiently complies with the requirement of written findings.

## DISPOSITION

The judgment and attorney fee order for the County are affirmed. The County is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ