[No. A097943. First Dist., Div. Four. Mar. 10, 2004.]

APRIL CHAPMAN, Plaintiff and Appellant, v.
BRUCE ENOS et al., Defendants and Respondents.

## COUNSEL

Kerr & Wagstaffe, James M. Wagstaffe, Pamela Urueta, Timothy J. Fox; Law Offices of Moss & Hough, Gary E. Moss and Mary Patricia Hough for Plaintiff and Appellant.

Provencher & Flatt, Gail F. Flatt and Janis H. Grattan for Defendant and Respondent Bruce Enos.

Senneff Freeman & Bluestone, Michael D. Senneff and Bonnie A. Freeman for Defendant and Respondent County of Sonoma.

## OPINION

**RIVERA, J.**—April Chapman (Chapman) appeals from a judgment upon a special verdict finding in favor of defendants Bruce Enos (Enos) and the County of Sonoma (County) on her causes of action for sexual harassment and retaliation. The pivotal issue for liability was whether the alleged harasser, Enos, was Chapman's supervisor. Chapman contends that the trial court erroneously modified the standard jury instruction on the definition of supervisor. We agree and conclude that the error requires reversal.

## I. FACTUAL BACKGROUND

### A. *Chapman's Work History*

In 1988, Chapman became an investigator for the County District Attorney's Office. She had previously worked as a deputy sheriff for the County Sheriff's Department for 10 years. As an investigator, Chapman's duties involved investigating cases "under limited direction." Her responsibilities

included "investigat[ion of] criminal and civil complaints, interview[ing] or interrogat[ion of] witnesses, law-enforcement officers, defendants' victims and/or other individuals who may provide pertinent information; [and] evaluat[ion] and analy[sis of] information." Chapman performed her duties under the direction of the deputy district attorney assigned to her unit but was under the supervision of the senior and chief investigators. The senior and chief investigators, and the district attorney, were responsible for hiring and firing investigators. The senior or chief investigator approved vacation leave for investigators. An investigator assigned to a vertical prosecution unit worked as a team with the deputy district attorney assigned to that unit and received instructions from that attorney.

B. *Chapman's Duties and Assignments in the Major Fraud Unit*

In January 1997, Chapman was assigned to the major fraud unit, a unit initially devoted to the prosecution of insurance and worker's compensation fraud.[1] Enos was the deputy district attorney assigned to the unit. The unit was located in a satellite office suite away from the main office. The unit shared office space with three other deputy district attorneys. Chapman's desk was in the common area of the suite. Enos and Chapman worked at the office suite for the majority of the workday while the other deputy district attorneys were generally there only in the mornings or late afternoons.

As an investigator for the major fraud unit, Chapman did front-line investigations, which included interviewing witnesses, obtaining search warrants and preparing a case for a complaint. She also did case preparation work, worked with law enforcement agencies and the Department of Insurance in developing cases, met with insurance companies, and conducted trainings. During the period that Chapman worked in the fraud unit, Enos directed her in virtually all of her duties. She received no assignments from her direct supervisors, the senior and chief investigators. While Enos did not have the authority or responsibility to promote her and was not responsible for preparing performance evaluations, the chief investigator would ordinarily seek his input in evaluating Chapman.[2] Chapman routinely "cleare[d]" her time off with Enos prior to seeking approval from the chief investigator, and believed that this was required. It was Chapman's understanding of County policy that any incidences of sexual harassment were to be reported to the individual's supervisor; in Chapman's case, she understood that Enos was her supervisor, or her "boss."

Enos testified that he was not responsible for Chapman's work performance and was not subject to discipline if her work was not properly completed.

---

[1] The unit eventually handled elder fraud and other major frauds.

[2] Chapman, however, was not evaluated during the period she worked in the fraud unit.

Enos and others testified that the deputy district attorneys do not tell investigators how to do their work, but do "direct" the investigators' work in the sense of describing and assigning the tasks to be done. In effect, both Enos and the County denied that Enos exercised any supervisory authority over Chapman.

## C. *Harassing Conduct*

Within the first two months after Chapman began working in the major fraud unit, she noticed a change in Enos's behavior toward her. He would eavesdrop on her telephone conversations, and became very interested in who she was spending time with outside the office. Enos conceded that he developed a crush on Chapman. He testified that he was trying to develop a friendship with her that would extend beyond the office. Chapman testified that Enos acted inappropriately in the office numerous times including asking to join her on "field trips" when she conducted witness interviews where his presence was not justified, asking if he could go on her noontime walks and commenting if he could watch or help when she went to change her clothing for the walks, making inquiries into her private life, and giving her small gifts. Chapman told Enos that she wanted only a business relationship with him and asked him not to give her any more gifts. Enos, however, did not stop with his inappropriate behaviors. He asked to join her on a cruise, prepared a business card that included a caricature of a woman with her skirt slit all the way up to her crotch area and her jacket cut down to her cleavage and asked her, "If I kill my wife, would you run away with me?" Enos subsequently asked her to join him for coffee over the weekend. Chapman declined the invitation and the following workday told him that his attentions were inappropriate. For the next four or five weeks, Enos did not bother Chapman. She thereafter received a voice mail message from Jerome Mautner (Mautner), another deputy district attorney, in which he repeated her name and used heavy breathing. Enos could be heard in the background during the message, laughing and saying, "I didn't tell him to call you."

Enos's behavior towards Chapman continued during 1998. Due to that behavior and the close working environment, Chapman became "[r]eally miserable." She dreaded going in to work, had difficulty doing her work, and was made to feel "very uncomfortable, very upset." Ultimately, it resulted in chronic stomach problems, difficulty sleeping and a loss of concentration. On November 10, 1998, she reported Enos's inappropriate behavior to Michael Mullins (Mullins), the District Attorney.[3] Mullins said that he would investigate her allegations and transferred her to the main office effective the

---

[3] Before reporting the alleged harassment, Chapman requested a transfer to the auto theft unit. When Mullins declined the request, Chapman reported Enos's actions.

following workday. Mullins subsequently disciplined Enos with a one-week suspension from work.

### D. *Procedural History*

On November 1, 1999, Chapman filed a complaint for sexual harassment, retaliation, failure to promote, public disclosure of private facts, breach of contract, breach of the covenant of good faith and fair dealing, and negligent and intentional infliction of emotional distress. She subsequently amended her complaint and named County, Mullins, Enos, Mautner, and Jack Karr as defendants. Defendants moved for summary judgment. The court granted the motions on Chapman's causes of action for breach of contract and breach of the covenant of good faith and fair dealing and negligent infliction of emotional distress. The court also granted Enos's motion as to Chapman's intentional infliction of emotional distress claim. The court denied defendants' motion for summary judgment on the sexual harassment claim, finding that there was a triable issue of fact as to whether Enos's conduct constituted sexual harassment and whether he was a supervisor. The court further denied summary judgment on the causes of action for retaliation, public disclosure of private facts and intentional infliction of emotional distress as to County, Mullins, and Mautner.

The remaining claims were tried before a jury. By special verdict, the jury found that Chapman had not proven by a preponderance of the evidence that Enos was her supervisor. Although the jury found that Mullins had taken an adverse employment action against Chapman and that the action was motivated by her complaint of sexual harassment, the jury found that there was a legitimate nondiscriminatory reason for the adverse employment action. The jury also found against Chapman on her cause of action for public disclosure of private facts.[4]

Chapman moved for a new trial contending that the court erroneously modified the language defining a supervisor in BAJI No. 12.08. The trial court denied the motion, finding that its modified instruction was a correct statement of the law and that even if erroneous, Chapman failed to object to the instruction and invited the error by citing *Maine Yankee Atomic, etc. v. N.L.R.B.* (1st Cir. 1980) 624 F.2d 347 (*Maine Yankee*) in her trial brief. This appeal followed.

---

[4] The court had previously granted the directed verdict motions of defendants Mullins and Enos on Chapman's punitive damages claim and of Mautner on the cause of action against him for intentional infliction of emotional distress. Chapman voluntarily dismissed her claim of retaliation against Mautner and the cause of action against Mullins for intentional infliction of emotional distress.

## II. DISCUSSION

### A. *Service of Notice of Appeal*

Preliminarily we address County's argument that Enos is not a party to this appeal because Chapman did not serve her notice of appeal or her designation of record on appeal upon Enos. While County acknowledges that Enos has participated in the appeal, it contends that the appeal must be dismissed because Chapman's notice failed to notify the parties that the judgment in favor of Enos was being appealed. This contention lacks merit.

"Failure to serve the notice of appeal neither prevents its filing nor affects its validity, but the appellant may be required to remedy the failure." (Cal. Rules of Court, rule 1(a)(3).) Here, Chapman remedied the failure by obtaining an agreement from Enos to waive any defects in service.[5] Consequently, Enos is properly a party in the appeal.

### B. *Modified BAJI No. 12.08 Instruction*

#### 1. *Background*

BAJI No. 12.08 defines a supervisor as it is defined in Government Code section 12926, subdivision (r), viz., "any individual having the authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the *responsibility to direct them*, or to adjust their grievances, or effectively to recommend that action, if, in connection with the foregoing, the exercise of that authority is not of a merely routine or clerical nature, but requires the use of independent judgment." (Italics added.) Subdivision (r) was added to section 12926, which is part of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), in 1999 to include the definition of supervisor employed by the Agriculture Labor Relations Act. (Stats. 1999, ch. 592, § 3.7; Lab. Code, § 1140.4, subd. (j).) The Legislative Counsel's Digest of the amendment specifically states that it is declaratory of existing law. (Legis. Counsel's Dig., Assem. Bill No. 1670 (1999–2000 Reg. Sess.) Stats. 1999, ch. 591.)

Here, the court gave BAJI No. 12.08 but modified the instruction by adding the following language to define "responsibility to direct": "In order for a person to be found to be a supervisor because he or she is . . . , 'responsible to direct the work of others' . . . , there are three requirements that

---

[5] Pursuant to the agreement, Enos agreed to waive any defects in service in exchange for Chapman's providing him copies of the reporters' transcript at her expense.

must be met: [¶] 1. The direction must be more than merely routine or clerical; [¶] 2. The direction must require the use of independent judgment; [¶] 3. The person giving the direction must be directly responsible for the performance of his or her department or unit and must be fully accountable and responsible for the performance and work product of the employees in his or her department or unit." Chapman argues that the modification's requirements that the supervisor be "fully accountable and responsible for the performance and work product of the employees" are not countenanced by the FEHA. We agree. We first address, however, defendants' argument that Chapman either waived her right to challenge the instruction or invited any error. While the question is a close one, we conclude the error was not waived or invited.

### 2. *Waiver or Invited Error*

The court opined that Chapman's claim against Enos could succeed only if Enos was found to have the responsibility to direct Chapman because there was "little or no evidence that Mr. Enos would have met any other definitions of supervisor." Prior to instructing the jury, the court requested briefing on the meaning of the phrase "responsibility to direct" in the definition of supervisor set forth in BAJI No. 12.08, which the court found to be vague. In response to this request, Chapman relied upon a previously submitted trial brief discussing case law on the "responsibility" term. In that brief she cited the case of *N. L. R. B. v. Fullerton Publishing Company* (9th Cir. 1960) 283 F.2d 545, 549 (*Fullerton*) as authority for the proper definition of the phrase "responsibility to direct." Chapman quoted from *Fullerton* as follows: " 'To be responsible is to be answerable for the discharge of a duty or obligation. Responsibility includes judgment, skill, ability, capacity, and integrity, and is implied by power.' " (*Ibid.*) She also took the position, however, that the unmodified BAJI No. 12.08 instruction was sufficient. The court then prepared a special instruction, utilizing language from *Maine Yankee, supra,* 624 F.2d at page 361, a case relying on *Fullerton* but citing language defining responsibility to direct to mean that a supervisor is " 'held fully accountable and responsible for the performance and work product of the [employees] in his department.' " Enos quoted this language in his trial brief on the definition of supervisor; Chapman did not. The conference on jury instructions was not reported, but the record indicates that Chapman interposed no objection to the modified instruction.

Although Chapman did not object to the modification, Chapman did maintain that the BAJI instruction was accurate and that no revisions were necessary. Accordingly, Chapman is deemed to have excepted to the court's modified instruction. (Code Civ. Proc., § 647 ["All of the following are deemed excepted to: . . . giving an instruction, refusing to give an instruction,

or modifying an instruction requested . . . ."].) " ' "To hold that it is the duty of a party to correct the errors of his adversary's instructions . . . would be in contravention of section 647, Code of Civil Procedure, which gives a party an exception to instructions that are given . . . . While the exception will be of no avail where an instruction states the law correctly but is 'deficient merely by reason of generality,' in other cases he will not be foreclosed from claiming error and prejudice." ' " (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 949 [160 Cal.Rptr. 141, 603 P.2d 58], disapproved on other grounds in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4 [88 Cal.Rptr.2d 19, 981 P.2d 944].) In short, although Chapman failed to offer a formal objection to the instruction, we find no waiver.

County and Enos also claim Chapman invited the instructional error because she cited language from an NLRB case in her trial brief to support her claim that Enos was a supervisor. The trial court, however, utilized language from *Maine Yankee*, a case upon which Enos relied in his trial brief, in crafting the special instruction. In drafting the modification, the court did not employ the *Fullerton* language Chapman quoted in her brief.[6] On this record, we conclude there was no invited error.

### 3. *Instructional Error*

■ Enos's and County's liability for sexual harassment devolved almost entirely on the issue of whether Enos was a supervisor within the meaning of the FEHA. Under the FEHA, an employer is strictly liable for the harassing actions of its supervisors and agents. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1042 [6 Cal.Rptr.3d 441, 79 P.3d 556]; *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1046 [58 Cal.Rptr.2d 122].) An employer, however, "is only liable for harassment by a coworker if the employer knew or should have known of the conduct and failed to take immediate corrective action." (*Doe v. Capital Cities, supra*, 50 Cal.App.4th at p. 1046.) Further, with respect to Enos, the trial proceeded on the theory that an employee is not personally liable to a coworker for sexual harassment under the FEHA absent a supervisory relationship. (*Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1134 [90 Cal.Rptr.2d 804, 988 P.2d 1083].)[7] Thus, whether or not the evidence showed Enos was a supervisor was the significant issue for liability in this case.

---

[6] In its ruling on Chapman's motion for a new trial, the court mistakenly states that "[p]laintiff's own trial brief cited Maine Yankee Atomic Power on the issue of 'responsibility to direct.' "

[7] Following the *Carrisales* decision, the Legislature amended the FEHA to specifically provide that a coworker could be held personally liable for harassment. (Gov. Code, § 12940, subd. (j)(3).) Chapman argued below that the amendment was retroactive. During pretrial discussions, the trial court ruled that it was not. The issue is currently pending before our Supreme Court in *McClung v. Employment Development Dept.* (2003) 113 Cal.App.4th 335 [6

Chapman conceded below that Enos did not have the authority to hire, fire, promote or transfer her. Her theory of the case was that Enos was her supervisor because he had the responsibility to direct her work. Chapman argues that the court's modified instruction requiring her to show "[t]he person giving the direction must be directly responsible for the performance of his or her department or unit and must be fully accountable and responsible for the performance and work product of the employees in his or her department or unit" created additional requirements for a finding of supervisor status that are not supported by law. As we have said, we conclude this argument has merit.

In modifying BAJI No. 12.08, the court relied on language in *Maine Yankee, supra*, 624 F.2d at page 361, construing the identical supervisor definition contained in the National Labor Relations Act (NLRA), title 29 United States Code section 152(11).[8] The *Maine Yankee* court was concerned with determining whether certain employees were supervisors and, thus, exempt from inclusion in the employee's collective bargaining unit. The question presented to the court was whether a shift-operating supervisor (SOS) had the responsibility to direct other employees. (*Maine Yankee*, at pp. 347–348.) The court determined that the SOS's duties included directing three other employees on each shift and that an SOS's responsibility was unique in that he was in charge of the nuclear plant's nerve center—the control room—and if anything went wrong with respect to the plant's electric power output, he was answerable. The court found this latter responsibility to be significant given that operator error could cause damage to the plant, if not the surrounding countryside and, thus, it could not be deemed routine and clerical. The court concluded that the SOS was "clothed with supervisory power" and " 'held fully accountable and responsible for the performance and work product of the [employees] in his department.' " (*Id.* at p. 361.)

---

Cal.Rptr.3d 504], review granted March 3, 2004, S121568. Chapman does not urge the applicability of Government Code section 12940, subdivision (j)(3) on appeal.

[8] Chapman argues that the court erred, preliminarily, by relying on NLRA cases to determine the meaning of the term "supervisor" under the FEHA. This contention finds support in our case law. (See, e.g., *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 643 [71 Cal.Rptr.2d 632] ["It is true that when interpreting the FEHA, California courts often adopt standards developed by federal courts in employment discrimination claims arising under title VII of the federal Civil Rights Act (42 U.S.C. § 2000e et seq.) because of similarities in the statutory language. [Citations.] But while federal cases may be instructive in interpreting the FEHA, they are not controlling."]; see also *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 74 [99 Cal.Rptr.2d 316, 5 P.3d 874] ["Only when FEHA provisions are similar to those in Title VII do we look to the federal courts' interpretation of Title VII as an aid in construing the FEHA."].) This rule is particularly apt in this case where the court's reliance on federal law involved, not title VII, but the NLRA and an interpretation of the statutory language in an unrelated factual context.

As noted, the court here crafted an instruction, based upon the language in *Maine Yankee,* requiring full accountability and responsibility for an employee's performance and work product in order to find that an employee is a supervisor. However, while full accountability and responsibility are certainly indicia of supervisory power, they are not *required* elements of either the *Maine Yankee,* or the FEHA definition of supervisor. Indeed, many supervisors with responsibility to direct others using their independent judgment, and whose supervision of employees is not merely routine or clerical, would not meet these additional criteria though they would otherwise be within the ambit of the FEHA supervisor definition.[9]

Here, there is evidence that Enos was a supervisor within the meaning of the FEHA. Although the record demonstrates that both the senior and chief investigators ultimately supervised Chapman, it was undisputed that Enos directed her day-to-day duties to conduct investigations and trial preparation on cases, and outlined her role in meetings and trainings. Indeed, Enos testified that in the two-year period in which he worked with Chapman in the fraud unit, Chapman received only three assignments from others. Further, the chief investigator testified he would ordinarily obtain information from the deputy district attorney in this type of unit in order to evaluate the investigator working in the unit. The evidence also showed that Chapman always cleared her time off with Enos before having it approved by the chief investigator, and that Chapman believed Enos was her supervisor or "boss."[10]

Defendants take the position that the court's modified instruction is, nonetheless, accurate because the phrase "responsibility to direct" is the functional equivalent of being "fully accountable and responsible for the performance and work product of the employees. . . ." In this, they rely on the dictionary definition of "responsible" as "marked by accountability." But as it relates to the issue before us, this definition is unhelpful for two reasons.

---

[9] At oral argument, counsel for Enos reminded us that "responsibility to direct" is also qualified by the phrase "in the interest of the employer." But this neither adds to nor detracts from our analysis, as there is no claim that Enos's directions to Chapman were not in the interest of County, their mutual employer.

[10] Also useful here, although not controlling, is the Equal Employment Opportunity Commission's enforcement guidance construing title VII, which answers the question of who qualifies as a supervisor: "An individual qualifies as an employee's 'supervisor' if: [¶] . . . [¶] (b) the individual has authority to direct the employee's daily work activities." (EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors (June 1999) ¶ III.A.) The guide also explains that a supervisor who does not have actual authority over an employee may nonetheless create vicarious liability for the employer "if the employee reasonably believed that the harasser had such power. The employee might have such a belief because, for example, the chains of command are unclear. Alternatively, the employee might reasonably believe that a harasser with broad delegated powers has the ability to significantly influence employment decisions affecting him or her even if the harasser is outside the employee's chain of command." (*Id.* at ¶ III.B., fn. omitted.)

First, one can be accountable for one's own actions without being accountable for those of others. Second, the argument appears to ignore the plain language of the statute which *itself* defines the circumstances under which the exercise of the responsibility to direct will be considered supervisory, i.e., "if . . . [it] is not of a merely routine or clerical nature, but requires the use of independent judgment."

■ We must construe the provisions of the FEHA broadly, to protect employees' rights to seek and hold employment without discrimination. (*Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1114 [95 Cal.Rptr.2d 514, 997 P.2d 1169].) ■ We, therefore, conclude the court erred in instructing the jury that a supervisor must be fully accountable and responsible for the employee's performance and work product. In our view, the error significantly restricted the class of employees subject to liability for sexual harassment, contrary to the FEHA. The trial court's modification of BAJI No. 12.08, which narrowed the definition of supervisor contained in the FEHA, impaired Chapman's rights under the statute and incorrectly stated the FEHA's statutory requirements for liability.

### 4. *The Error Was Prejudicial*

While the giving of an erroneous instruction is not inherently prejudicial (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 573–580 [34 Cal.Rptr.2d 607, 882 P.2d 298]), we conclude that the error here requires reversal. "[I]nstructional error requires reversal only ' "where it seems probable" that the error "prejudicially affected the verdict." ' [Citation.] The reviewing court should consider not only the nature of the error, 'including its natural and probable effect on a party's ability to place his full case before the jury,' but the likelihood of actual prejudice as reflected in the individual trial record, taking into account '(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled.' " (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 983 [67 Cal.Rptr.2d 16, 941 P.2d 1203].)

Here, the instructional error centered on the key issue in the case. Without a finding that Enos was a supervisor, the jury could not reach the issue of whether Enos's actions constituted sexual harassment. The record contained substantial evidence suggesting Enos had a responsibility to direct Chapman's work such that without the additional requirements in the modified instruction, a jury finding that Enos was a supervisor was likely, or at least possible. County emphasized the special instruction in its closing argument, noting that the "critical factor" was whether the person giving the direction was "fully accountable and responsible for the performance and work product of the employee . . . ." "That is why, with each investigator or supervisor on the

witness stand, you heard a line of questioning about whether [Enos] would be subject to criticism or discipline if Ms. Chapman made a mistake on a case, or how does the criticism come to Ms. Chapman for that. And to a person, the policy is consistent; the criticism comes from the Chief Investigator to the investigator in the office. Not—It is not laid upon the shoulders of the Deputy District Attorney." Further, counsel for Enos informed the jury that "responsibility to direct does not mean what you would ordinarily think it means. It has a special legal meaning, and that is the instruction that Judge Beaupre read to you. [¶] The real key to that, and Mr. Senneff referred to it as the critical element, is, was Bruce Enos held fully accountable and responsible for Ms. Chapman's work performance? . . . [¶] . . . And the only evidence you heard was that Mr. Enos was never held accountable for the work of any DA Investigator."

In this case, there is also the unusual circumstance that the jury presented a statement together with its verdict. The jury stated, in part, "We, the jury, believe that we have followed the letter of the law and the instructions provided to us by the Court regarding the interpretation of the law as it relates to each of the charges made by the plaintiff in this case. [¶] However, we, the jury, would like to state for the record that reaching these verdicts was made extremely difficult out of concern that these verdicts could send some unintended messages. . . . [¶] Should the defendants interpret our verdicts as meaning that, . . . 'business as usual is okay,' . . . at the County regarding the handling of alleged workplace harassment, then we believe that our verdicts could unintentionally contribute to the possibility of future similarly tragic occurrences. [¶] We sincerely hope that this trial results in some positive actions at the County that minimize the likelihood of such cases coming before a jury again."

■ The record as a whole leaves little doubt that the modified jury instruction was instrumental in leading the jury to find that Enos was not a supervisor.[11] We, therefore, conclude it is reasonably probable that the instructional error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.)

---

[11] To demonstrate prejudice, Chapman relies on the declarations of two jurors submitted in support of Chapman's motion for a new trial. These declarations state that the majority of the jury would have found Enos to be a supervisor but could not agree that he was "wholly accountable" for Chapman's work. This amounts to impeachment of a jury verdict with evidence of the juror's subjective reasoning process, which is impermissible. (*People v. Dewberry* (1992) 8 Cal.App.4th 1017, 1021–1022, fn. 1 [10 Cal.Rptr.2d 800]; and see Evid. Code, § 1150.) Accordingly, we do not consider these declarations.

## III.   DISPOSITION

The judgment is reversed and the cause is remanded for a new trial. Chapman shall recover her costs on appeal.

Kay, P. J., and Sepulveda, J., concurred.