Filed 6/27/25  Doe v. Transdev Services CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TRANSDEV SERVICES, INC.,<br><br>    Defendant and Respondent. | B327603<br><br>(Los Angeles County Super. Ct. No. 19STCV43993) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly Fujie, Judge.  Reversed with directions.

Gusdorff Law and Janet Gusdorff; The Finkel Firm, Jake D. Finkel and Sheryl L. Marx, for Plaintiff and Appellant.

Payne & Fears, Ray E. Boggess and Erika M. Rasch, for Defendant and Respondent.

————————————————

Jane Doe appeals from a judgment following a grant of summary judgment in favor of her former employer, Transdev Services, Inc.  Doe claims that in 2019 a fellow Transdev employee sexually assaulted her while they were working.  Doe sued Transdev, alleging two causes of action under the Fair Employment and Housing Act (FEHA)—for sexual harassment based on a hostile work environment and failure to prevent harassment—as well as a host of non-FEHA claims.

Summary adjudication was proper for Doe's common law claims against Transdev for the intentional torts of sexual assault and battery, false imprisonment, and intentional infliction of emotional distress, as well as related violations of Civil Code sections 43 and 51.7, all of which hinged on either respondeat superior or ratification theories of liability as to Transdev.  However, because a material factual dispute remains over whether Doe's attacker was a supervisor, the trial court erred in granting summary adjudication on Doe's hostile work environment cause of action.  Summary adjudication was also improper for Doe's causes of action for failure to prevent harassment and negligent infliction of emotional distress, because there are triable issues of fact about whether Transdev had taken reasonable steps to prevent further harassment upon receiving a complaint from another employee about inappropriate behavior by Doe's alleged attacker.

Therefore, we reverse the judgment and the order granting Transdev's motion for summary judgment.  We direct the court to enter a new order denying Transdev's motion for summary judgment, denying Transdev's motion for summary adjudication on Doe's causes of action under FEHA and for negligent infliction

2

of emotional distress, and granting the motion on her other causes of action.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Assault and Doe's Claims Against Transdev*

Transdev is a transportation company that contracted with the Antelope Valley Transit Authority (the Transit Authority) to operate its public bus system. In November 2018, Transdev hired Doe as a bus driver working out of the Transit Authority's Lancaster facility. At that time, Robert Taylor worked for Transdev as a road supervisor, but at some point in 2018 or 2019 his title (along with that of all the road supervisors in Lancaster) changed to quality controller.

In July 2019, Doe reported to a supervisor (not Taylor) that she had stopped abruptly at a red light, causing a disabled passenger to fall out of his wheelchair and hit his head. Quality controller Terrance Cloud investigated the incident and gave a report to William Jackson, Jr., the safety and training manager. Jackson decided Doe needed retraining on braking and asked Cloud to have Doe retrained. Cloud asked Taylor, the only other available quality controller, to handle the retraining.

According to Doe's complaint, during her shift the following day, Taylor interrupted her route to tell her another driver would be taking over for her and that he would be conducting a coaching of her based on the braking incident. Doe exited the bus she had been driving, and Taylor drove her in a car back to the base where Tayor instructed her to drive another empty bus. Taylor directed Doe to drive to two different restaurants because he was hungry. Taylor made inappropriate sexual comments, including "I want to fuck you, I wish I could bend your ass right here," and

3

he laid his glove over the video surveillance camera mounted on the rear view mirror of the bus. When Doe expressed shock and fear and said she wanted to get off the bus, Taylor mocked her.

Eventually Taylor commanded Doe in an angry tone to pull over. Accessing the locked cabinet behind the driver's seat, he ejected the hard drive that stored the feed from the on-board cameras. Ignoring Doe's pleas, Taylor overpowered and sexually assaulted her.

According to an incident report prepared by Jackson, at 3:50 p.m. that afternoon, Jackson asked Cloud whether Doe and Taylor had returned. The retraining had begun around 1:30 p.m. and typically lasted between 60 and 90 minutes. Cloud told Jackson he had been trying to reach Taylor by radio with no response. He and Jackson used the GPS system to locate the bus and drove to it.

When Jackson and Cloud opened the bus doors, Doe quickly headed down the bus aisle to meet them. Cloud saw the hard drive sitting on the front seat. When Doe got back to the base, upon seeing Cloud, she thanked him "[f]or saving [her]."

After leaving work, Doe reported the incident to the police.

Doe's operative second amended complaint alleges causes of action against Transdev, Taylor, and the Transit Authority, including claims against Transdev for sexual harassment in violation of FEHA (Gov. Code[1] § 12940, subd. (a)); failure to prevent harassment in violation of FEHA (§ 12940, subd. (k)); "sexual assault, battery, and ratification"; violation of Civil Code

---

[1]     Undesignated statutory references are to the Government Code.

4

sections 43 and 51.7;[2] false imprisonment; and intentional and negligent infliction of emotional distress.

B.    *Transdev's Motion for Summary Judgment and Supporting Evidence*

    1.    *Summary judgment motion*

    In moving for summary judgment or in the alternative summary adjudication, Transdev argued Doe's FEHA harassment claim (her first cause of action) failed because Taylor was not a supervisor under FEHA and Transdev did not fail to take "prompt remedial action" upon learning of Doe's allegations. Transdev asserted Doe's failure to prevent harassment claim (third cause of action) and her negligent infliction of emotional distress claim (tenth cause of action) failed because Transdev took reasonable steps to prevent harassment, including investigating and finding prior incidents involving Taylor to be unsubstantiated.

    Transdev contended Doe's second, fourth, fifth, eighth, ninth, and tenth causes of action for sexual assault, battery, and ratification; violation of Civil Code section 43; violation of Civil Code section 51.7; false imprisonment; intentional infliction of emotional distress; and negligent infliction of emotional distress,

---

[2]    Civil Code section 43 "codifies causes of action for false imprisonment, assault, battery, invasion of privacy, and a number of business torts." (*Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1289.)  Civil Code section 51.7 provides a cause of action for "gender violence" where "the defendant threatened or committed violent acts against the plaintiff," and had "a prohibited discriminatory motive." (*Gabrielle A.*, at p. 1291.)

5

respectively, all failed because they relied on untenable theories of respondeat superior or ratification liability on the part of Transdev. Regarding Doe's respondeat superior theory, Transdev posited it could not be held vicariously liable for Taylor's alleged sexual assault because as a matter of law it occurred outside of the scope of Taylor's employment. Transdev further asserted the undisputed facts showed Transdev never ratified the alleged misconduct, but instead took "immediate investigative and remedial action" once Doe complained of the assault.

### 2. *Transdev's supporting evidence*

#### a. *Transdev's response to Doe's allegations*

Jackson and Cloud recovered the hard drive that was sitting on the front seat of the bus driven by Doe during the retraining, and Jackson told Cloud to view its contents "to see if the training was performed and what was going on." That night, Cloud emailed Jackson, explaining that the recording had a gap because Taylor removed the hard drive.

The next morning, around 9:00 a.m., Doe and two union representatives went to human resources generalist Luz Perkins's office and told her that Taylor had sexually assaulted Doe. Jackson then informed Taylor of Doe's allegations, placed him on investigative leave, gave him a "your side of the story" form to complete, collected his badge and keys, and made sure he left the premises. Perkins opened an investigation and got written statements from Cloud, Jackson, and Doe. Taylor never returned the "your side of the story" form and resigned by email two days later without returning to work. Perkins then reached out to Doe to let her know that Taylor was no longer with Transdev and that Doe, who had gone on leave, could return to work whenever she was ready. Because Taylor never gave his

6

version of events, Perkins concluded she lacked sufficient evidence to determine whether a sexual assault had occurred.

   b. *Transdev's investigation of Estrada's complaint regarding Taylor's inappropriate behavior*

In May 2019, another Transdev employee, Gloria Estrada, reported two incidents involving Taylor. In the first, she claimed that in April Taylor said to a dispatcher, Patricia Lewis, "tell her to stop, my dick is getting hard." Estrada said operations supervisor Ashley Robinson witnessed the comment. In the second incident, Estrada said she did not pay for her cell phone service, and Taylor allegedly responded, "If I had what you have, I wouldn't pay either," while referencing her breasts with his eyes and shoulders.

In response to Estrada's complaint, Perkins collected written statements from and interviewed Taylor, Lewis, Robinson, and Estrada. Lewis denied the incident between her and Taylor had occurred. Perkins concluded Estrada's complaint was unsubstantiated. She determined Estrada was upset because Taylor, who lacked supervisory authority over her, had directed her to perform some kind of task.

Perkins took notes on her investigation because Estrada was having performance issues. Perkins did not compile her notes into a written report summarizing the investigation and instead verbally communicated her findings to Estrada.

   c. *Transdev's trainings and policies*

At onboarding, all Transdev employees, including Taylor, received a copy of the employee handbook, a standalone unlawful harassment policy, and a document titled "Sexual Harassment Facts." The handbook and policy explain what constitutes unlawful harassment, how to report it, and the procedures

Transdev uses to investigate complaints. Transdev employees also undergo a sexual harassment prevention training, which Taylor and Doe both received.

d. *Doe's supervisors and Taylor's status*

Doe was hired by Perkins and reported to operation supervisors Aitor Urionabarranechea and Robinson, who set Doe's schedule. Either Urionabarranechea or Robinson issued all the attendance notices and written disciplinary warnings that Doe received as an employee. Robinson, who also supervised Taylor, testified Taylor did not "directly supervise," assign duties to, or have the authority to issue write-ups to Doe.

Doe reported she and Taylor had met briefly during a group retraining where Taylor signed Doe's training slip. Otherwise, the only other time she recalled being with Taylor was on the retraining at issue here.

e. *Road supervisors and quality controllers*

Transdev introduced evidence of Taylor's transition from road supervisor to quality controller and the duties associated with each role. Taylor began working for Transdev in 2017 as a bus driver and was later promoted to road supervisor. Road supervisors could discipline bus drivers. Taylor testified that as a road supervisor, his duties included ensuring driver safety, reporting accidents, and conducting retrainings. He lacked authority to hire, fire, or suspend employees.

In late 2018, the road supervisors at the Lancaster facility were trying to join the Teamsters Local 848 union that already included bus drivers. Because the union prohibited members from supervising or disciplining other members, the road supervisor role was eliminated following a collective bargaining agreement (CBA), and the position of quality controller was

created.  The CBA provided that quality controllers "shall not be required to fill out employee discipline forms" or "have access to any employee personnel files."

The quality controllers reported to the same operations supervisors as the bus drivers.  Taylor, Jackson, Perkins, Cloud, Robinson, and Transdev's regional vice president Ibrahima Toure testified that after the transition under the CBA, quality controllers had no authority to supervise, discipline, or evaluate other employees, nor to hire, fire, set pay, approve time off, or assign routes.  Jackson stated quality controllers could not initiate progressive discipline, and Cloud testified that as a quality controller he did not have the authority to discipline other employees.

Taylor testified that after the title change, he was no longer a supervisor and "some of the duties changed because we were not – like I said, again, we weren't in a position of any authority. We weren't in a position to fire anybody, none of that; so it was just – they just changed the name."  He said he did not supervise any employees "in particular by themselves" as a road supervisor, no one reported to him, and he lacked the authority to discipline others.  He said he never issued write-ups and compared his role to "serv[ing] papers," explaining that if a write-up was required, he merely delivered it.

Robinson stated Jackson's department—the safety and training team—would order retrainings.  Cloud testified that quality controllers could gather facts by reviewing footage and speaking with employees but did not decide whether retraining was necessary.  That determination rested with safety or operations supervisors.  The safety and training team ordinarily conducted retrainings, but would ask a quality controller to do

9

them if no one from that team was available. Jackson explained that quality controllers observed bus drivers and pulled bus footage at the request of operations supervisors, who would then determine whether coaching was warranted or involve Jackson to make that determination.

C.    *Doe's Opposition and Supporting Evidence*
      1.    *Doe's opposition to Transdev's motion*
      Doe contended triable issues remained with respect to whether Taylor was a supervisor. She pointed to evidence that Taylor held a supervisory position when she was hired and that his duties did not change when he became a quality controller. Doe claimed Taylor twice disciplined her in that latter role—once by verbally reprimanding her and once by retraining her—and signed forms as a "supervisor." Doe argued Taylor had the authority to direct her daily activities, as shown by the fact that he ordered Doe to participate in a retraining with him.

      Doe also argued a jury could find Taylor was an "ostensible" supervisor because Transdev ratified Taylor's exercise of supervisory authority. Doe pointed to the fact that Perkins said Taylor had no authority to fill out "disciplinary forms" relating to Doe, but Transdev "never reprimanded, coached, or even suggested that Taylor stop this conduct."

      Doe further asserted that triable issues remained regarding whether Transdev knew or should have known of Taylor's harassing conduct and failed to take measures to investigate or remediate it. Doe contended Transdev did not investigate Estrada's claim that Taylor had commented about her breasts, and Transdev made only a half-hearted investigation into Estrada's other contention about Taylor's inappropriate

10

comments to Lewis, unreasonably concluded nothing inappropriate had transpired, and improperly failed to discipline Taylor.

Doe did not respond to Transdev's arguments about her respondeat superior or ratification theories.  In a footnote, she stated the FEHA supervisory liability issue and the non-FEHA causes of action "involve the same legal analysis and underlying facts."

   2.   *Doe's supporting evidence*[3]

         a.      *Estrada's complaint*

In addition to the evidence introduced by Transdev, Doe relied on Robinson's emails to Perkins regarding Estrada's complaint.  Robinson said she heard Taylor say "get [Lewis] away because [his] nipples are getting hard" during an exchange where Lewis had playfully poked Taylor's chest.  Robinson also noted that Estrada previously said Taylor "was inappropriate with other driver[s]" and Estrada, but Estrada had not provided specific examples, and Robinson had never observed such behavior by Taylor.  Robinson also reported that Estrada had

_____

[3]     Because the evidence cited in Doe's separate statement submitted in support of her opposition to the summary judgment motion raise a triable issue of fact on her FEHA and negligence claims, we need not consider additional facts Doe discusses on appeal that were not referenced in her separate statement or memorandum of points and authorities, which Transdev contends we should not consider.  (See *Parsons v. Estenson Logistics, LLC* (2022) 86 Cal.App.5th 1260, 1265, fn. 5 [noting the " ' "Golden Rule of Summary Adjudication" ' " that " '*[a]ll* material facts must be set forth in the separate statement' "].)  Doe does not rely on new facts for the remaining causes of action for which we conclude summary adjudication was proper.

once said she retaliated against her ex-husband and others involved in her divorce. Robinson believed that context was relevant because Estrada had recently been irritated when Taylor asked her to complete attendance paperwork and had said, "that will be the last time he wipes his ass with me." Robinson flagged this for Perkins "in[ ]case this is a situation of retaliation."

Taylor's written statement regarding the Estrada complaint said in full, "I Robert Taylor do not remember anything about this incident in question if i said anything that was offensive to anyone or they over heard any comment that i've made in a non professinal matter i apologize [*sic*]."

b. *Transdev's policy of investigating complaints*

Transdev's unlawful harassment policy provides, "Investigation of a complaint will normally include conferring with the parties involved and any named apparent witnesses. An attempt should be made to get written statements from all individuals that are interviewed or involved, particularly the primary parties involved. A thorough investigation must still be completed even if the person making the allegation refuses to complete the 'Incident Investigation' form or any other written statement."

c. *Taylor's supervisory duties*

Perkins stated that Taylor was a supervisor before he became a quality controller. In Taylor's October 2020 responses to Doe's form interrogatories, he listed "Quality Control Supervisor" as a "description of his duties." In his deposition, Taylor stated he had no supervisory authority as a road supervisor, but then also said that when he became a quality controller, "they stripped the title of supervisor" and he was "no

longer [a] supervisor." When describing the change from road supervisor to quality controller, Taylor also said, "some of the duties changed," but then said he never had authority for hiring or firing and his job duties were "exactly the same."

Taylor confirmed he stopped Doe in the middle of her shift and told her she would not be finishing her scheduled route, and a relief driver would take over. Before the retraining, Taylor gave Doe several pre-filled forms and asked her to sign them. One of these forms, the "Employee Coaching Form," indicated Doe had been coached for "Poor Job Performance," with Taylor noting she had been retrained on controlling speed and judging stopping distances. Taylor signed above the "Supervisor" line, and Doe signed above the "Employee" line. Taylor had also filled out an Employee Coaching Form for Doe in March 2019 after she hit the curb with her tire. Taylor similarly signed that form as "Supervisor." When asked whether Taylor should have signed as a supervisor, Perkins responded the form was outdated and Taylor was not a supervisor.

Transdev's emergency incident form also listed Taylor as one of the options for "Responding Supervisor," along with Cloud and two others. Taylor completed such a form in June 2019 after another vehicle clipped the mirror of the bus Doe was driving. Taylor checked boxes for whether there were injuries, identified which managers and operations supervisor personnel he notified, and described the event.

D.    *The Summary Judgment Ruling*

In March 2023, the trial court granted Transdev's motion for summary judgment and entered judgment in its favor.

13

The court first determined no triable issue of fact existed regarding whether Taylor was Doe's supervisor. In concluding Taylor's job did not fall within the ambit of FEHA's definition of a supervisor, the court relied on Taylor's testimony that he lacked disciplinary authority. The court discounted Doe's evidence that Taylor testified his job duties did not change when his title changed from road supervisor to quality controller and continued to refer to himself as a supervisor and signed forms labeled with that title, reasoning the evidence showed the forms had not been updated to reflect current titles. It also rejected Doe's argument that Taylor exercised supervisory control by interrupting Doe's shift for retraining, as the evidence showed Jackson—not Taylor—ordered the retraining. The court similarly rejected Doe's argument that Taylor was an " 'ostensible' supervisor," finding no evidence that Transdev "actually carried out supervisory authority that was ratified by Transdev."

The court also found no triable issue as to whether Transdev knew or should have known of Taylor's conduct. The court noted Estrada's complaint was unrelated to Doe and, in any event, Transdev promptly investigated it. The court found that upon learning of Doe's allegations, Transdev immediately placed Taylor on leave and opened an investigation. Further, Doe did not dispute that Transdev provided sexual harassment training and complaint procedures to employees.

The court did not explicitly address the arguments regarding the non-FEHA causes of action and granted Transdev's motion "in its entirety." Doe timely appealed.

**DISCUSSION**

A. *Applicable Law and Standard of Review*

1. *Summary judgment*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subds. (c) & (f).) We review a summary judgment ruling de novo. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.) In so doing, we " 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Ibid.*)

"A defendant may bring a motion [for summary judgment] on the ground the plaintiff cannot prove one of the required elements of the case." (*Luebke v. Automobile Club of Southern Cal.* (2020) 59 Cal.App.5th 694, 702; see Code Civ. Proc., § 437c, subds. (o)(1), (2) & (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) "To carry its initial burden . . ., a defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence necessary to establish at least one element of the cause of action." (*Luebke*, at p. 702.) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (*Id.* at pp. 702-703; see Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) "The plaintiff must produce ' "s*ubstantial*" ' responsive evidence sufficient to establish a triable issue of fact." (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415.) "In determining if the papers show that there is no

15

triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence."  (Code Civ. Proc., § 437c, subd. (c).)

> 2.    *FEHA*

"It is an unlawful employment practice for an employer to 'harass' an employee based on membership in a protected class" (*Bailey v. San Francisco District Attorney's Office* (2024) 16 Cal.5th 611, 626), including "because of . . . sex" (§ 12940, subd. (j)(1); see *Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 692 (*Wawrzenski*)).  "Sexual harassment . . . includes ' "any unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature." ' " (*Wawrzenski*, at p. 692; see Cal. Code Regs., tit. 2, § 11019, subd. (b)(2)(D); see also *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1045 [harassment includes sexual assault].) In 2019, "the Legislature added section 12923, which 'clarified existing law' " to provide that " '[h]arassment cases are rarely appropriate for disposition on summary judgment' " and "involve issues 'not determinable on paper.' " (*Wawrzenski*, at p. 693; see § 12923, subd. (e).)

"FEHA imposes two standards of employer liability for sexual harassment, depending on whether the person engaging in the harassment is the victim's supervisor or a nonsupervisory coemployee."  (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1040-1041; see *Wawrzenski*, *supra*, 106 Cal.App.5th at p. 694.)  " 'When the harasser is a supervisor, the employer is strictly liable for the supervisor's actions.' " (*Bailey v. San Francisco District Attorney's Office*, *supra*,

16

16 Cal.5th at p. 635.) " 'When the harasser is a nonsupervisory employee, employer liability turns on a showing of negligence.' " (*Ibid.*) Specifically, when the harasser is not the plaintiff's supervisor, an employer is liable " 'if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.' " (*Ibid.*; see § 12940, subd. (j)(1).)

In addition, "FEHA makes it a separate unlawful employment practice for an employer to 'fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.' " (*State Dept. of Health Services v. Superior Court*, *supra*, 31 Cal.4th at p. 1040; see § 12940, subd. (k).) Such a claim "require[s] a finding of actual discrimination or harassment under FEHA before a plaintiff may prevail under section 12940, subdivision (k).' " (*Paleny v. Fireplace Products U.S., Inc.* (2024) 103 Cal.App.5th 199, 213; see Cal. Code Regs., tit. 2, § 11023(a)(2) ["There is no stand-alone, private cause of action under . . . section 12940(k). . . . [T]he private claimant must also plead and prevail on the underlying claim of discrimination, harassment, or retaliation."].)

B.    *Triable Issues of Fact Remain About Whether Taylor Was a Supervisor*

Under FEHA, a supervisor is "any individual having the authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the responsibility to direct them, or to adjust their grievances, or effectively to recommend that action, if, in connection with the foregoing, the exercise of that authority is not of a merely routine or clerical nature, but

17

requires the use of independent judgment." (§ 12926, subd. (t).) Doe does not dispute that Taylor did not have the authority to hire, suspend, or fire her, or to set her pay or give her a raise or a bonus. However, the definition of a supervisor under FEHA includes persons who have "the responsibility to direct" another employee or to recommend that another employee be discharged or disciplined, if the exercise of that authority is not of a "routine or clerical nature," but rather requires "independent judgment." (§ 12926, subd. (t); see *Chapman v. Enos* (2004) 116 Cal.App.4th 920, 930 (*Chapman*) ["supervisors with responsibility to direct others using their independent judgment, and whose supervision of employees is not merely routine or clerical," fall within FEHA definition].) A triable issue remains about whether Taylor exercised such a role during the relevant time period.

*Chapman*, *supra*, 116 Cal.App.4th 920 is instructive. *Chapman* involved a sexual harassment claim by an investigator in the district attorney's office who claimed a deputy district attorney sexually assaulted her. (*Id*. at p. 922.) The plaintiff had conceded that the attorney did not have the authority to hire, fire, promote, or transfer her; rather, her theory was that he was her supervisor "because he had the responsibility to direct her work." (*Id*. at p. 929.) The appellate court reversed the judgment in favor of the defendant following a jury trial. (*Id*. at pp. 925, 933.) The court determined that the trial court had improperly instructed the jury that to qualify as a supervisor, a person must be fully accountable and responsible for an employee's work, which are "not *required* elements of . . . the FEHA definition of supervisor." (*Id*. at p. 930.) Rather, the appellate court determined a person could satisfy the FEHA definition if he or she had the "responsibility to direct others using their

18

independent judgment," and their "supervision of employees [was] not merely routine or clerical."  (*Ibid.*)

The court determined there was evidence the attorney met the FEHA definition of a supervisor because he "directed [plaintiff's] day-to-day duties to conduct investigations and trial preparation on cases, and outlined her role in meetings and trainings."  (*Chapman*, *supra*, 116 Cal.App.4th at p. 930.)  Although the senior and chief investigators "ultimately supervised" the plaintiff, she received few assignments from anyone other than the attorney, always cleared her time off with him before having it approved by the chief investigator, and believed the attorney was her "supervisor or 'boss.' "  (*Ibid.*)  And while the attorney did not have the authority to promote or evaluate the plaintiff, the chief investigator regularly sought his input in evaluating her work.  (*Id.* at p. 923.)  The court found this was sufficient evidence the attorney was a supervisor vis-à-vis the plaintiff.  (*Id.* at pp. 930-931.)

Similarly, here, although Taylor did not have the authority to hire, fire, or promote Doe, and although Doe's formal supervisors were Robinson and Urionabarranechea, there is evidence that raises a triable issue about whether Taylor had the "responsibility to direct" Doe's day-to-day work.  (§ 12926, subd. (t); *Chapman*, *supra*, 116 Cal.App.4th at p. 929.)  Taylor interrupted Doe's scheduled shift and redirected her, conducted retrainings for Doe at least twice, and instructed her to sign related paperwork.  The Employee Coaching Form, identifying him as "Supervisor," indicated Doe engaged in poor job performance and listed the corrective actions taken to improve Doe's performance, including retraining.  When Taylor filled out an Employee Coaching Form for Doe in March 2019, after Doe hit

19

the curb with her bus's rear tire, Taylor likewise signed that form as "Supervisor."

Transdev relies on Perkins's testimony that the forms referencing quality controllers as "supervisors" had not been updated, and emphasizes that the retraining of Doe was ordered by Jackson and was only carried out by Taylor. However, there was additional evidence from which a reasonable juror could conclude that Taylor did exercise supervisory responsibility in his role as quality controller. Perkins testified Taylor had supervisory authority as a road supervisor, before his job title was changed to quality controller, and Jackson confirmed that road supervisors could discipline bus drivers. Taylor's contradictory statements reinforce the ambiguity: He reported that he had no supervisory authority as a road supervisor, but also said that when he became a quality controller, "they stripped the title of supervisor" and he was "no longer [a] supervisor." He also testified "some of the duties changed," but said his job duties were "exactly the same." Moreover, he continued to refer to himself as a "Quality Control Supervisor" in verified discovery responses. Viewed in the light most favorable to Doe, the evidence raises a triable issue about whether Taylor's actions in directing Doe, assessing her job performance, and recommending corrective action on forms identifying him as a supervisor were merely "routine or clerical," or rather were exercises of authority that required "independent judgment." (§ 12926, subd. (t); see *Chapman*, *supra*, 116 Cal.App.4th at p. 931; *cf. Webco Industries, Inc. v. N.L.R.B.* (10th Cir. 2003) 90 Fed.Appx. 276, 281-282 [substantial evidence supported conclusion of National Labor Relations Board that employee trainer who performed only minor

20

supervisory duties did not satisfy the definition of a "supervisor" under 29 U.S.C. § 152(11), which mirrors the FEHA definition].)

Summary adjudication on the first cause of action for sexual harassment under FEHA was therefore improper.[4]

C. *Triable Issues of Fact Remain About Whether Transdev Took All Reasonable Steps To Prevent Harassment*

Transdev moved for summary adjudication on Doe's third and tenth causes of action for failure to prevent harassment under section 12940, subdivision (k), and for negligent infliction of emotional distress, respectively, arguing both claims failed as a matter of law for the same reason—Transdev took reasonable steps to prevent harassment.

Under section 12940, subdivision (k), plaintiffs must establish: (1) they were subjected to harassment; (2) the employer failed to take all reasonable steps to prevent it; and (3) that failure caused harm. (*Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal.App.5th 865, 877, accord, *Caldera v. Dept. of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31,

---

[4] We need not reach Doe's argument that Transdev is judicially estopped from asserting that road supervisors are not "supervisors" under FEHA because it took the opposite position in *Transdev Services, Inc. v. N.L.R.B.* (8th Cir. 2021) 991 F.3d 889, and thus we decline Doe's request to take judicial notice of documents relating to that case. We also need not reach Doe's argument that a triable issue remains as to whether Taylor was an "ostensible" supervisor, or her alternative contention that even if Taylor is not a supervisor, Transdev is liable for Taylor's sexual harassment because Transdev should have known of his conduct and failed to take appropriate corrective action (§ 12940, subd. (j)(1).)

43-44.) Liability under section 12940, subdivision (k), "depend[s] upon numerous factors sometimes unique to the particular employer including, but not limited to, its workforce size, budget, and nature of its business, as well as upon the facts of a particular case." (Cal. Code Regs. tit. 2, § 11023(a)(1).)

Even assuming Transdev carried its initial summary judgment burden on this issue, the evidence regarding Transdev's response to Estrada's complaint about Taylor's prior inappropriate behavior presents a factual dispute as to the reasonableness of Transdev's steps toward preventing Doe's alleged harassment.[5] A reasonable jury could conclude that Transdev should have done more to investigate Estrada's complaint, discipline Taylor, and take steps toward preventing further harassment or misconduct by Taylor. (See *California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1025 ["An employer must take *all* reasonable steps necessary to prevent discrimination."].)

For example, Doe submitted evidence to demonstrate that Transdev failed to investigate Estrada's allegation that Taylor referred to her breasts in speaking with her. In addition, a jury could fault Perkins for not further investigating Estrada's allegation that Taylor said Lewis was making his "dick" hard

---

[5] The trial court excluded Doe's Exhibit J—Estrada's complaint—for failure to properly authenticate it. However, as Transdev acknowledges, it included the same document as an exhibit and cited it in its separate statement, and the trial court discussed Estrada's complaint in its order. We therefore need not reach Doe's argument that the court erred in sustaining Transdev's objection to Exhibit J because any alleged error was harmless.

22

(which Robinson corroborated, except she thought Taylor said Lewis was making his "nipples" hard), and instead crediting Robinson's suggestion that Estrada's complaint was motivated by her desire to retaliate against Taylor. Assessing whether Transdev took all reasonable steps to prevent harassment requires evaluating and comparing the accounts of the two incidents, as well as the reasonableness and thoroughness of Perkins's investigation, factual conclusions, and determination not to discipline Taylor. These analyses are fact-intensive, involve assessing credibility, and are inappropriate for resolution on summary judgment.

Nor is it determinative that Estrada, as opposed to Doe, made the previous complaint. The issue is whether such a third-party complaint should have prompted Transdev to take additional steps to prevent further harassment of any Transdev employee. (See *M.F. v. Pacific Pearl Hotel Management LLC* (2017) 16 Cal.App.5th 693, 701 [that "initial harassment was not directed at [the plaintiff] does not preclude [the defendant employer] from having responsibilities under the FEHA toward her"].) "If an employer knows a particular person's abusive conduct places employees at unreasonable risk of sexual harassment, the employer cannot escape responsibility to protect a likely future employee victim merely because the person has not previously abused that particular employee." (*Ibid.*)

The same reasoning applies to Doe's negligent infliction of emotional distress claim. "[T]here is no independent tort of negligent infliction of emotional distress. [Citation.] 'The tort is negligence.' " (*Belen v. Ryan Seacrest Productions, LLC* (2021) 65 Cal.App.5th 1145, 1165.) " 'Negligence liability will be imposed on an employer if it "knew or should have known that

23

hiring [or retaining an] employee created a particular risk or hazard and that particular harm materializes." ' " (*D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 210, 235.) Doe's complaint asserts Transdev was negligent because it breached its "duty to provide Plaintiff with a workplace free from sexual harassment, assault and battery." As with Doe's failure to prevent harassment claim, there are factual issues about the adequacy of Transdev's response to Estrada's complaint that preclude summary adjudication on Doe's cause of action for negligent infliction of emotional distress.

D.    *Summary Adjudication of Doe's Remaining Causes of Action Was Proper*

Transdev moved for summary adjudication on Doe's second, fourth, fifth, eighth, ninth and tenth causes of action for sexual assault, battery, and ratification; violation of Civil Code section 43; violation of Civil Code section 51.7; false imprisonment; and intentional infliction of emotional distress, respectively, arguing they were based on theories of respondeat superior or ratification liability, which failed as a matter of law. Doe did not substantively address these arguments in her opposition in the trial court. The trial court granted Transdev's motion "in its entirety," without addressing Doe's non-FEHA claims. We examine whether Transdev met its initial burden and whether summary adjudication on these causes of action was thus warranted.[6] (See *Gray v. La Salle Bank, N.A.* (2023)

---

[6]    We do not address theories Doe raises for the first time on appeal. (*Ryan v. County of Los Angeles* (2025) 109 Cal.App.5th 337, 371 [" ' "A party is not permitted to change his position and

95 Cal.App.5th 932, 948 [" '[W]e may affirm the summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court.' "].)

Transdev met its burden of demonstrating Doe's causes of action for common law intentional torts and violations of the Civil Code premised on respondeat superior liability failed as a matter of law.  Respondeat superior liability attaches only when the conduct at issue is within the scope of the harasser's employment. (See *Myers v. Trendwest Resorts, Inc.* (2007) 148 Cal.App.4th 1403, 1428.)  Although the question of the "scope of employment" is often a question of fact, summary adjudication is appropriate where, as here, verbal harassment or a physical assault was "motivated by [an employee's] personal reasons unrelated to his job duties and in violation of the employer's sexual harassment policy," even if it took place at the workplace during work hours. (*Id.* at p. 1432; accord, *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1006, 1012-1013 ["except where sexual misconduct by on-duty police officers against members of the public is involved [citations], the employer is not vicariously liable to the third party for such misconduct," even when the

_____

adopt a new and different theory on appeal.  To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." ' "]; *Kime v. Dignity Health, Inc.* (2024) 101 Cal.App.5th 708, 721 [arguments not raised in opposition to motion for summary judgment are forfeited].)  Even though Doe did not address these causes of action in the trial court, we still must examine whether Transdev met its initial burden on summary judgment with respect to them.  (*Y.K.A. Indus., Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 367.)

misconduct is committed by a supervisor with a "high degree of authority over the victim"].)  Thus, Transdev established as a matter of law that it does not have respondeat superior liability with respect to Doe's second, fourth, fifth, eighth, and ninth causes of action against Transdev.[7]

Similarly, Transdev demonstrated there was no evidence to support the theory that Transdev ratified Taylor's misconduct. "As an alternative to respondeat superior, an employee may be liable for an employee's act where the employer subsequently ratifies the originally unauthorized tort." (*Samantha B. v. Aurora Vista Del Mar, LLC* (2022) 77 Cal.App.5th 85, 109.)  The failure to investigate, respond to charges, or discharge an employee after learning of wrongful conduct may be evidence of ratification.  (*Ibid.*; *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 810.)  Although ratification is generally a question of fact (*Samantha B.*, at p. 109), the undisputed facts demonstrate that as soon as Doe made her complaint, Jackson suspended Taylor, gave him a form for an investigation, and ensured he relinquished his badge and keys and left the premises.  Perkins immediately opened an investigation and got written statements from Cloud, Jackson, and Doe.  After Taylor resigned, Perkins reached out to Doe to let her know that Taylor was no longer with Transdev and that Doe could return to work

_____

[7]     The same reasoning does not apply to Doe's tenth cause of action for negligent infliction of emotional distress.  As discussed, there are factual disputes about whether Transdev was negligent in its response to Estrada's complaint and in retaining and failing to discipline Taylor.  Therefore, summary adjudication is not warranted for the cause of action for negligent infliction of emotional distress.

whenever she was ready. Based on these facts, Transdev's response "simply leaves no room for any inference that [Transdev] ratified" Taylor's assault or in any way "engaged in 'positive misconduct' that ratified the coemployee's tort." (*Franklin v. Southern California Permanente Medical Group* (C.D. Cal., Nov. 7, 2006, No. CV05-0330 GAF MANx) 2006 WL 5309515, at *37-40 [no ratification where employer "immediately conducted an inquiry after the altercation, which resulted in [the perpetrator] being placed on leave, and then terminated"].) Therefore, Transdev also demonstrated Doe lacked evidence to support a ratification theory for her second, fourth, fifth, eighth, and ninth causes of action.

Because Transdev's liability for these causes of action hinged on either respondeat superior or ratification theories, neither of which Doe addressed in opposing summary judgment, Doe failed to meet her burden to establish there was a disputed material fact prohibiting summary adjudication on these claims.

## DISPOSITION

The judgment is reversed. We remand and direct the trial court to enter a new order (1) granting Transdev's motion for summary adjudication on Doe's second cause of action for sexual assault, battery, and ratification; fourth cause of action for violation of Civil Code section 43; fifth cause of action for violation of Civil Code section 51.7; eighth cause of action for false imprisonment; and ninth cause of action for intentional infliction of emotional distress; (2) denying Transdev's motion for summary adjudication as to Doe's first cause of action for sexual harassment based on a hostile work environment, third cause of action for failure to prevent harassment, and tenth cause of

27

action for negligent infliction of emotional distress; and (3) denying Transdev's motion for summary judgment.  Doe is entitled to recover her costs on appeal.


                                        STONE, J.

We concur:


        SEGAL, Acting P. J.



        FEUER, J.